Freiría & Co., S. en C., Demandante y Apelante, *v.* Cortés Hermanos y Cía., Demandada y Apelada.

Apelación procedente de la Corte de Distrito de San Juan, Primer Distrito, en pleito sobre cobro de dinero.

No. 2839.—Resuelto en junio 25, 1923.

Alegaciones—Prueba—Peso de la Prueba.—Cuando las alegaciones esenciales de la demanda son negadas en la contestación, el peso de la prueba no cambiará, a no ser que se aleguen subsiguientemente alegaciones afirmativas en la contestación, que sean tan incompatibles con sus negativas que equivalgan a una admisión de todas las alegaciones esenciales de la demanda.

Evidencia — *Self-Serving Evidence.* — No se puede crear evidencia (*self-serving evidence*) para sí mismo, mediante comunicaciones escritas a la otra parte respecto a la naturaleza de las negociaciones entre ellas, o a la responsabilidad de la parte a quien van dirigidas, a falta de alguna contestación en que muestre su conformidad con las mismas; una declaración para beneficio propio no es más admisible cuando se ha hecho por escrito que cuando se hace de palabra.

Id.—Prueba—Contrato Escrito.—El artículo 51 del Código de Comercio no sólo no fué derogado por la Ley de Evidencia de 1905, sino que es compatible con la misma en cuanto prohibe ésta la prueba oral extrínseca para añadir, variar o modificar un contrato excepto cuando se alega fraude o sorpresa.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. H. F. Besosa.*

Abogados de la apelada: *Sres. Texidor & de la Haba.*

El Juez Asociado Sr. Franco Soto, emitió la opinión del tribunal.

Esta es una acción personal en cobro de dinero.

La demandante vendió y entregó a la demandada un lote de arroz de 100 sacos y reclama su precio montante a la suma de $1,154. Este contrato se efectuó por correspondencia entre demandante y demandada, pero aunque estos son hechos que no fueron controvertidos, la demandada alegó como defensa especial que al llegar el arroz a su poder encontró que no era de la calidad ordenada y que con tal motivo demandante y demandada celebraron un subsiguiente convenio verbal que autorizaba a la demandada a vender y liquidar dicho arroz por cuenta de la demandante, quien sufriría las pérdidas o percibiría los beneficios, si los hubiese; que la demandada confirmó tal convenio por escrito y llevándolo a efecto vendió 40 sacos de arroz que rindieron un total neto de $468.75, cantidad que fué remesada a la demandante, que rehusó recibirla; y que no habiéndose podido vender los restantes sacos de arroz, la demandada requirió a la demandante para que se hiciera cargo de ellos.

Planteado en tal forma el litigio, y juzgado el caso por todos sus trámites, la corte inferior declaró sin lugar la demanda, y en sus conclusiones fundando su sentencia, dice:

"La corte encuentra probado que la demandada, por su socio Arturo Cortés, convino con la demandante en que aquélla vendería y liquidaría la partida de cien sacos de arroz, por cuenta de la demandante, y sufriendo ésta las pérdidas si algunas hubiese, o percibiendo los beneficios que resultaren. Es evidente que este convenio desvirtuó en absoluto el contrato anterior de compraventa, y por tanto, la demandante no puede reclamar el resultado o cumplimiento de aquél."

La apelante sostiene la comisión de dos errores, y uno y otro implicarían una errónea apreciación de la prueba.

La cuestión fundamental que envuelve la solución de este pleito es determinar si realmente existió el subsiguiente convenio que en su defensa alega la demandada, y si determinada

la forma en que pudo existir ha podido a su vez destruir los efectos del contrato primitivo en que se funda la demanda. En ese sentido, no está demás decir que el peso de la prueba ha pasado a la demandada, porque esta parte, sosteniendo la afirmativa, es la que tiene que establecer la certeza de su contención por los medios de prueba que la ley exige en cir- cunstancias como las que rodean el presente caso.

"Pero cuando las alegaciones esenciales de la demanda son ne-
gadas en la contestación, el peso de la prueba no cambiará, a no ser
que se aleguen subsiguientemente alegaciones afirmativas en la con-
testación, que sean tan incompatibles con sus negativas que equi-
valgan a una admisión de todas las alegaciones esenciales de la de-
manda." 10 R. C. L. pág. 900.

Siendo esta la situación del caso, y examinada la prueba, nos encontramos que la defensa especial de la demandada se hace depender de la declaración de Arturo Cortés, miembro de la firma Cortés Hermanos & Co., y de la corresponden- cia que medió entre una y otra parte, a través de la cual po- dremos sencillamente descubrir lo que realmente ocurrió en- tre las partes.

La parte substancial de la declaración de Cortés se re- duce a manifestar que el lote de arroz de 100 sacos no era de la calidad pedida; que escribió a la demandada la no aceptación del artículo y que luego personalmente trató el asunto con Evaristo Freiría, socio de la compañía deman- dante, y que después de discutir el asunto le dijo: " 'Don Evaristo vamos a transar esto, si le parece, en la siguiente forma: Yo trataré de vender este arroz; no quiero ganar un centavo pero no quiero perjudicarlo. Si yo puedo obte- ner para la venta de este arroz un precio de factura yo lo venderé por su cuenta,' y quedó conforme. Tan fué con- forme que al día siguiente, y tan creí que estaba conforme que al día siguiente llegué a casa e inmediatamente escribí una carta a los Sres. Freiría confirmando lo convenido

\* \* \* ." Y la carta a que se refiere el testigo dice como sigue:

"Manatí, P. R., julio 22/920.—Sres. Freiría & Co., San Juan.— Muy Sres. y amigos nuestros: Confirmamos la conversación que con su don Evaristo tuvo ayer nuestro don Arturo, en la cual fué convenido que haríamos todo lo humanamente posible por realizar sin perjuicio los 100 s/ arroz recibidos recientemente de Uds., pero que en el caso de que tuviera que haber algún quebranto será de su cuenta de Uds. Celebraremos poder comunicarles la venta total sin pérdida alguna. De Uds. attos., amigos y S. S. (fdo.) Cortés Hnos. & Co."

Y continuando su testimonio Cortés, refiriéndose a los efectos de su carta a la demandante, dicho testigo dice:

"Esa carta no la contestaron los primeros días, y luego, me parece que fué 5 o 6 días después, tuve que escribirles nuevamente haciéndoles una remesa de dinero, y en la misma carta donde les acompañaba la remesa del dinero les hacía constar que no habían contestado mi carta anterior; entonces la contestaron sin negar lo que yo les había dicho y convenido, pero en una forma ambigua rechazaron lo que habíamos convenido."

La contestación a que alude el testigo Cortés, procedente de la demandante, es como sigue:

"San Juan, P. R., julio 28/920.—Sres. Cortés Hermanos & Co., Manatí.—Muy Sres. n/ y amigos: Nos favoreció su atta. carta de ayer acompañada de su cheque por $169.50 que abonamos en la apreciable cuenta de Uds. Muchas gracias.

"Refiriéndonos a su atta. carta 22 del cote., no la habíamos contestado porque tenemos la seguridad de que, lejos de tener Uds. pérdida en la venta del arroz No. 40, obtendrán un buen beneficio.

"Para convencernos más de lo que les hemos dicho sobre este arroz, el domingo lo hemos cambiado de sitio calando saco por saco, y todo lo encontramos igual al que vió su don Arturo en esta su casa, admirándonos de que, siendo el arroz que hace más tiempo tenemos en almacén, es el que se conserva mejor y con más brillo.

"De Uds. attos. amigos S. S.,—(fdo.) Freiría & Co."

Asimismo resulta que la demandante dirigió a la demandada, el 18 de agosto de 1920, otra carta, que dice:

"San Juan, P. R., agosto 18/920.—Sres. Cortés Hermanos & Co., Manatí.—Muy Sres. n/ y amigos: Acusamos recibo de sus attas. cartas 16 y 17 del cte., habiendo retirado de la primera su cheque por $207.00 que hemos acreditado en su apreciable cuenta. Muchas gracias.

"Refiriéndonos a los 100 sacos de arros No. 40 que dicen Uds. haber dejado por nuestra cuenta, suponemos que hay un mal entendido por parte de Uds. pues no recordamos haberles autorizado a vender por nuestra cuenta dicho arroz, habiendo sido, por el contrario, comprado en firme por Uds.

"Ya hemos tenido el gusto de demostrarles a su don Arturo personalmente, después de haber calado en su presencia una gran cantidad de sacos del mismo número y de la misma estiba, que todo el arroz era igual al que habían llevado Uds. anteriormente, y el mismo don Arturo llegó a la conclusión, en la cual convinimos nosotros, de que, si algún saco les resultó a Uds. ligeramente distinto a los otros debió ser de aquellos que han estado en contacto con la pared o con el suelo en la estiba, lo que dió lugar a que nosotros cambiásemos la estiba de sitio el domingo siguiente según hemos tenido el gusto de participarles, sin que tampoco en este cambio hayamos encontrado ni un solo saco que difiriera de los demás.

"Es natural que Uds. no hayan podido vender estos 100 sacos con la misma facilidad que los anteriores, porque el mercado ha descendido notablemente, y sus clientes indudablemente no estarán dispuestos a pagar el mismo precio de antes; pero si Uds. se ponen en mercado verán como lo venden con la misma facilidad de antes, pues el estacionamiento de la venta no obedece a la calidad, que aún hoy sigue siendo de las mejores que se pueden conseguir en arroz, sino al precio que resulta caro, y lo sentimos por Uds. y por nosotros, pues nos cuesta una buena pérdida.

"Suyos attos. amigos y S. S., (fdo.) Freiría & Co."

Esta es la contestación a las de fecha 16 y 17 de agosto de 1920, y esta última, que consideramos de excepcional importancia, su contenido es como sigue:

"Manatí, P. R., agosto 17/920.—Sres. Freiría & Co., San Juan.— Muy Sres. y amigos nuestros: Como quiera que, como no obstante

nuestros mayores esfuerzos, no hemos podido sino realizar alrededor de 40 s/ de arroz, de los 100 s/ No. 40 que dejamos de cuenta de Uds., por resultar muy inferior al mismo No. que habíamos recibido antes, solicitamos las instrucciones de Uds., ya que consideramos sería conveniente reducir su precio. Es indudable que hubiéramos obtenido una rápida venta de haber resultado superior, como el otro, pues estaba siendo objeto de muy buena demanda.

"Esperan sus órdenes sus attos. amigos y S. S. Cortés Hnos. & Co."

Una simple lectura de las cartas que hemos copiado explica la condición de este caso. La alegada existencia del subsiguiente convenio o novación del contrato de compraventa, solamente aparece de las cartas de la demandada, pero nada se desprende en tal sentido de las escritas por la demandante. Por el contrario, la demandante en su contestación de fecha 18 de agosto, 1920, sostiene en forma inequívoca que la venta se hizo en firme y no de un modo eventual sin sujeción a condición alguna, disipando las dudas que la demandada trata de inferir de la primera réplica de la demandante de julio 28, 1920, interpretándola como una contestación evasiva, y una admisión implícita de la modificación del convenio original. Sin embargo, a poco que examinemos aquella contestación de la demandante, se puede ver que fué una negativa expresa del convenio oral que tendía a destruir los efectos del primer convenio, por cuanto a la demandante consignó: 1º., que lejos de tener pérdidas la demandada obtendría un buen beneficio; y 2º., que el arroz corresponde al tipo o muestra por el que fué vendido. Esto último era la causa primordial de la queja de la demandada para invocar la modificación del convenio, y siendo ello así, ¿cómo era posible entender por admisión implícita los términos de tal contestación, cuando la demandante insiste y ratifica en ella "que el arroz vendido corresponde al tipo o muestra por el que fué vendido?" Estos son términos bien explícitos por su letra, y mucho me-

nos podrían interpretarse en su espíritu como un asentimiento al nuevo convenio por inferencias que en ninguna forma podríamos deducir. Así es que, apareciendo claramente que existe una ausencia completa de parte de la demandante de haber admitido el segundo convenio, la regla aplicable en estos casos es ''que no se puede crear evidencia (*self-serving evidence*) para sí mismo, mediante comunicaciones escritas a la otra parte respecto a la naturaleza de las negociaciones entre ellas, o a la responsabilidad de la parte a quien van dirigidas, a falta de alguna contestación en que muestre su conformidad con las mismas.''   10 R. C. L. 1150.

''Existe una distinción entre el efecto que ha de darse a las declaraciones orales hechas por una parte a otra, que son en contestación o en contradicción de alguna manifestación hecha por la otra parte, y una manifestación por escrito contenida en una carta que tal parte escribe a otra. Bien puede ser que según la mayoría de las circunstancias lo que se dice a un hombre en su presencia, lo cual lleva la idea de una obligación por su parte hacia la persona que a él se dirige, o a favor de quien se hace la manifestación, está en cierto modo llamado a contradecir o a explicar; pero el dejar de contestar una carta es enteramente diferente, y no hay regla de ley que exija a una persona entrar en correspondencia con otra respecto a un asunto en disputa entre ellos, o que sostenga que debe considerarse el silencio como una admisión contra la parte a quien la carta se dirige. Tal regla haría que una parte pudiera obtener una ventaja sobre la otra, y no tiene sanción en la ley.'' 10 R. C. L. 1150.

Pudiera admitirse que el testimonio oral de Arturo Cortés, socio de la razón social demandada, tiende a sostener su defensa especial explicando las circunstancias que rodearon y dieron origen a su alegado convenio para dejar sin efecto el primero, pero aparte de que ''una declaración para beneficio propio no es más admisible cuando se ha hecho por escrito que cuando se hace de palabra;'' (10 R. C. L. pág. 1150,) la posición en que se coloca la demandada en sus

cartas a la demandante es inconsistente con la declaración rendida por su socio Cortés. Este testigo, en síntesis, refiere que vino a San Juan, discutió el asunto con otro de los socios de la demandante, y sostiene que convinieron que el arroz en disputa quedaría en poder de la demandada para ser vendido por cuenta y riesgo de la demandante. A pesar de lo convenido, y sin decirse que tal convenio estaba sujeto a restricción alguna y alegar después haber sido confirmado por carta de fecha julio 22, 1920, *supra,* y proceder a su ejecución vendiendo parte del artículo (40 sacos de arroz), la demandada, no obstante, pide instrucciones a la demandante para disponer del resto de la mercancía. Véase carta de agosto 17, 1920. Si el subsiguiente convenio fué firme, aceptando la demandante los riesgos o beneficios, según el caso, ¿qué necesidad tuvo la demandada de pedir instrucciones para vender parte del lote, si las tenía para vender el tódo? Tál vez esta actitud irreconciliable pudiera explicarse en el sentido de que el mercado estaba bajando, pero este mismo razonamiento era lo que podía hacer sospechosa la situación en que se colocaba la demandada al intentar rescindir de algún modo su primitiva operación para ponerse a cubierto del revés del mercado en aquellos precisos momentos en que el mismo continuaba declinando, según aparece de la prueba.

Por otra parte, no apareciendo prueba escrita del subsiguiente convenio, ¿podía la corte inferior tomar en cuenta, aisladamente, la declaración del testigo Arturo Cortés, que afirma la existencia de tal convenio? Este es un caso que se refiere a un contrato mercantil, y el artículo 51 del Código de Comercio prescribe:

"Art. 51.—Serán válidos y producirán obligación y acción en juicio los contratos mercantiles, cualesquiera que sean la forma y el idioma en que se celebren, la clase a que correspondan y la cantidad que tengan por objeto, con tal que conste su existencia por alguno de los medios que el derecho civil tenga establecidos. Sin

embargo, la declaración de testigos no será por sí sola bastante para probar la existencia de un contrato, cuya cuantía exceda de 1,500 pesetas, a no concurrir con alguna otra prueba.

      \*      \*      \*      \*      \*      \*      \*

La cuantía de la transacción que nos ocupa excede de la señalada en la disposición anterior y su interpretación es tan clara y sencilla que la única cuestión a decidir es si tal disposición legal está en vigor después de haberse incorporado a nuestros estatutos la Ley de Evidencia, aprobada en marzo 9 de 1905.

En el reciente caso de *José J. Benítez Díaz et al. v. Carlota y Clementina González y Lugo,* número 263, término de octubre, 1922, resuelto por la Corte Suprema de los Estados Unidos, se hace mención de la norma legal que debe seguirse en casos de un conflicto entre una ley especial y otra de carácter general en oposición. En el lenguaje de aquella corte se dice:

"La objeción de más fuerza es la que hemos expuesto, o sea, la de que una ley especial definitivamente aplicable limita las expresiones generales que aparezcan en otras leyes, las que de no ser por las especiales, serían suficientes." 261 U. S. 102.

No tenemos duda de que una regla así enunciada viene a sostener la vigencia del artículo 51 del Código de Comercio, como ley especial en oposición a la Ley de Evidencia de 1905, pero nos parece conveniente llamar la atención que la disposición del artículo 51 citado no puede considerarse como algo extraño, ni sui géneris, que caracterizara una legislación determinada. La ley se funda generalmente en principios que no son el patrimonio de ninguna nación, y en este caso concreto nos parece que el artículo 51 del Código de Comercio español se funda en el mismo principio de nuestra ley de Evidencia que prohibe la prueba oral extrínseca para añadir, variar o modificar un convenio anterior escrito a menos que su objeto fuera demostrar que hubo fraude o sorpresa, y en tal sentido nuestra ley de Evidencia general, de procedencia

americana, sostiene y está en armonía con la prescripción del artículo 51 del Código de Comercio. Partiendo, pues, de la vigencia de dicho artículo, y no existiendo otro medio de prueba para sostener la demandada las alegaciones de su defensa que el testimonio oral de uno de sus socios, obvia afirmar que tal testimonio no es bastante para que se entendiera desvirtuado y sin valor el contrato original de compraventa, y por tanto, la corte inferior no solamente cometió manifiesto error apreciando los hechos y aceptando como probada la defensa de la demandada, si que además no hizo la debida aplicación de la regla de evidencia que en forma más estricta señala el Código de Comercio para aquellas transacciones mercantiles, en las que dicha regla fija un límite pecuniario para su aplicación.

En este sentido ya esta Corte Suprema en el caso de *Loíza Sugar Co.* v. *Baquero & Co.,* 29 D. P. R. 803, había sostenido la aplicación del artículo 51 del Código de Comercio, y en la opinión de la corte, se dice:

"Los apelados alegan que estos sacos de azúcar se vendían para especular y que tal venta es una excepción al segundo de los artículos citados del Código de Comercio. La naturaleza del contrato debe determinarse no por los fines con los cuales los compradores intentaban usar el azúcar sino por el origen de los azúcares mismos. Si la demandante producía el azúcar, de acuerdo con el artículo 326 del Código de Comercio una venta hecha por ella claramente no era mercantil y no caía dentro de las prescripciones del artículo 51 del referido código. Sea esto como fuere, no se demostró el origen de este azúcar. En otras palabras, no se probó que la Loíza Sugar Company estuviera claramente comprendida dentro de las excepciones señaladas en el artículo 326, *supra,* y por tanto nos inclinamos a sustentar el criterio de que el artículo 51 del Código de Comercio era claramente aplicable y cualquier duda que tengamos nos sentimos obligados a resolverla en favor del espíritu del Código de Comercio de que en los contratos de esta cantidad ·por lo general su existencia debe hacerse constar por escrito a ·menos que estén claramente comprendidos en las excepciones indicadas en el artículo 326 de dicho código."

No creemos demás decir que si bien el motivo del subsi
guiente convenio se funda, según alega la demandada, en la
diferencia de calidad o tipo de arroz, no aparece, sin em-
bargo, de la prueba que la demandada intentara cumplir
fuertemente con lo que asimismo prescribe el Código de Co-
mercio para la solución de esos casos, pues de ese modo hu-
biera conseguido la seguridad y protección de sus derechos.

Por lo expuesto, la sentencia debe revocarse y dictarse
otra sentencia declarando con lugar la demanda, debiendo
cada parte pagar sus costas.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Aso-
ciados Aldrey y Hutchison.

El Juez Asociado Sr. Wolf no intervino en la resolución
de este caso.