ORANGE RICE MILLING COMPANY, demandante y apelada, *v.*
ANGEL BARASORDA, demandado y apelante.

No. 4657.—*Sometido:* Mayo 3, 1929. *Resuelto:* Enero 31, 1930.

*O. B. Frazer* y *R. Castro Fernández,* abogado de la apelante; *H.
G. Molina,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Se trata, en efecto, de una acción para recobrar el precio
de mil sacos de arroz que la demandante Orange Rice Milling
Company sostuvo vendió al demandado Barasorda en junio
24, 1926. En la demanda se alegaba que el contrato surgió
a virtud de una orden directa de la Spencer Sales Company,
que era agente del demandado.

La corte declaró que la agencia fué suficientemente pro-
bada, y, como dictó sentencia a favor de la demandante, nece-
sariamente, que dicha Spencer Sales Company tenía la debida
autoridad para hacer u ordenar el embarque de los citados
mil sacos de arroz. El demandado Barasorda había negado
la agencia de la Spencer Sales en general, y además, que

hubiera recibido la determinada marca o calidad de arroz pedida por él.

Si se deja a un lado la cuestión de la autoridad general por parte de la Spencer Sales Company, el caso gira específicamente sobre la cuestión de si la entrega hecha fué de mil sacos de arroz *"good fancy blue rose."* De acuerdo con la apelada, el contrato estaba evidenciado por ciertos cablegramas cruzados entre las partes. La apelada, a nuestra manera de pensar, abandona, por lo menos hasta cierto punto, la suposición de una agencia general al decir:

"La única cuestión en este litigio es si Barasorda, como consecuencia de estos cables, estaba obligado a aceptar los 1,000 sacos de arroz que su agente Spencer compró a la demandante Orange Rice Milling Co. en 23 de junio, 1925." (Debe ser 1926).

Como el demandado y apelante niega totalmente que existiera la agencia y señala como error el que la corte resolviera que había tal agencia, prestaremos al asunto alguna consideración especial.

La corte inferior no analizó la prueba para demostrar la agencia o para definir los límites de la misma. Los autos no revelan ninguna carta específica o convenio oral mediante el cual la Spencer Sales Company se constituyera en agente general para comprar arroz para el demandado. La Spencer Sales Company era en realidad la razón social de un tal Sr. Spencer. Lo único en los autos que tiende a demostrar que existía una agencia general o algo semejante es la declaración o declaraciones del mismo Spencer. Fuera del principio general de que una agencia no debe establecerse por la sola declaración del agente, los autos en su totalidad no demuestran que existiera esa agencia. Barasorda, al ocupar la silla testifical, negó enfáticamente tal agencia. Suponer que Spencer pudiera ir a comprar arroz generalmente y hacer que Barasorda fuera responsable, parece enteramente absurdo. No podría imaginarse que Barasorda diera a nadie que no estuviese enteramente subordinado a él el derecho general de comprar arroz, especialmente cuando, según se admitió en

este caso, la remuneración de Spencer debería emanar de las personas que vendían el arroz. Claramente no fué la intención de Barasorda que Spencer comprara cuando se le antojara, y no creemos que el mismo Spencer así lo alegaría. La supuesta agencia general sería nula por ser indefinida. Sus supuestos límites quedaron totalmente sin definir. A lo sumo era una agencia para comprar arroz como y según lo ordenara Barasorda.

Lo que en realidad sucedió fué que Spencer visitó la isla por lo menos en una ocasión, y sus relaciones con Barasorda llegaron a ser muy amistosas. Barasorda probablemente dijo que le compraría a Spencer o por mediación de éste. Empero, nada hay en la prueba que demuestre que Spencer fuera específicamente algo más que un corredor (*broker*) de arroz. El apelante sostiene que él le compraba a Spencer y que éste en forma alguna era su agente. Creemos, sin embargo, que la prueba demuestra que Barasorda de cuando en cuando utilizaba a Spencer como comprador suyo y que estaba tratando de hacerlo así al ordenar los mil sacos de arroz. Incidentalmente, nada hallamos que autorice la manifestación de la apelada de que Spencer se convirtió en un agente para aceptar de los molinos un pedido entregado a Spencer por Barasorda. Tal pudo ser y posiblemente fué la creencia del propio Spencer, pero conforme hemos indicado, la prueba de esto surge del mismo Spencer. Por consiguiente, tenemos que acudir a los cablegramas para averiguar si existía un contrato entre las partes, y en qué consistía ese contrato.

En 23 de junio de 1926, Barasorda dirigió el siguiente cablegrama a Spencer:

"Telegraph quick best price on good fancy blue rose during July."
(Traducción.) "Telegrafíe inmediatamente mejor precio para arroz *good fancy blue rose* durante julio."

El mismo día Spencer contestó lo siguiente:

"Stocks fancy blue rose. This difficult to buy at present due to light offerings. Can probably buy $6¾. Cannot buy for less than. How about lot #544 rice $6½ cif. This cheap."

(Traducción.) "Existencias *fancy blue rose* difíciles de comprar debido a pocas ofertas. Probablemente podamos comprar a $6¾. No podemos comprar por menos. ¿Qué diría del lote No. 544 a $6½ cif? Es barato."

A este cablegrama, Barasorda contestó lo que sigue:

"Buy 1,000 pockets provided good fancy blue rose 6¾¢ equal quantity second half of June and first half month following."

(Traducción.) "Compre mil sacos siempre que sean *good fancy blue rose,* a 6¾¢, para embarcar iguales cantidades segunda quincena de junio y primera quincena del siguiente mes."

El 24 de junio, 1926, Spencer contestó como sigue:

"We cannot ship second half of June. Have bought 1,000 pockets RMA inspection certificate *fancy blue rose* first half month July steamer Southseas. Can buy more same price, 1,000 pockets steamer Southseas. Telegraph answer quick immediate and necessary. Difficult to buy due to light offerings."

(Traducción.) "No podemos mebarcar segunda quincena de junio. Hemos comprado 1,000 sacos certificado inspección RMA *fancy blue rose* para primera quincena de julio, por vapor South Seas. Podemos comprar más al mismo precio, 1,000 sacos vapor South Seas. Telegrafíe pronto, contestación inmediata necesaria, difícil comprar debido a pocas ofertas."

Y el 25 de junio Barasorda telegrafió:

"There is more demand for better grades. We think you had better telegraph us on extra fancy blue rose."

(Traducción.) "Existe más demanda por mejor calidad. Creemos ustedes deben telegrafiarnos sobre *extra fancy blue rose.*"

Con excepción del segundo cablegrama, al cual corresponde la palabra "fancy", transcribimos estos cablegramas tal como aparecen en el alegato de la apelada, toda vez que hay algunas disparidades en los autos y son un poco confusos. Aparece además que cuando la Spencer Sales Company recibió orden de comprar mil sacos de arroz *good fancy blue rose,* llamó por teléfono a la Orange Rice Milling Company, y compró mil sacos de arroz "certificado de inspección RMA *fancy blue rose*" al mismo precio fijado por Barasorda. La

teoría de la apelada es que cuando Spencer telegrafió: "Hemos comprado mil sacos certificado de inspección RMA *fancy blue rose . . .*" si el Sr. Barasorda no deseaba ese arroz debió haber telegrafiado más o menos en los siguientes términos:

"Cancel, will not accept RMA inspection certificate. My order was provided *good fancy blue rose.*"

(Traducción.) "Cancele, no aceptaré certificado de inspección RMA. Mi pedido decía siempre que sea *good fancy blue rose.*"

Tal deber por parte de Barasorda surgía solamente si un pedido anterior de él era tan amplio o indefinido que Spencer pudiera derivar alguna autoridad de la misma para pedir a nombre de Barasorda o vender a él los efectos que en realidad se despacharon. Sin embargo, hay algo que aparece en el alegato de la apelada, y es que Spencer sabía, o probablemente sabía, que el artículo despachado no era lo que Barasorda y el comercio en Puerto Rico entendían por arroz *good fancy blue rose.* Barasorda mantenía que él escribió tan pronto como le fué posible, a pesar de que no telegrafió, como se sugirió, y si bien creemos que no se lo impuso ningún deber, no tenemos duda alguna de su buena fe al tratar con Spencer. Evidentemente, él creyó que estaba ordenando una cosa muy específica al decir "good fancy blue rose," y la tendencia general de la prueba se inclina a sostenerlo. En lo que atañe al deber de contestar, una cuestión parecida surgió en el caso de *Freiría* v. *Cortés Hermanos & Co.,* 32 D.P.R. 127, y citamos de 10 R.C.L. 1150 al efecto de que en una conversación oral una persona puede a veces estar obligada a contestar, pero que no hay regla alguna de derecho que exija que una persona conteste correspondencia, o que sostenga que el mero silencio deba ser considerado como una admisión. Bajo los hechos de este caso, Barasorda estaría obligado a rechazar una oferta independiente hecha por Spencer sólo por la teoría de que Spencer fuera en realidad algo así como un agente general autorizado para actuar a nombre de Barasorda. Spencer ofreció a Barasorda mercan-

cía que éste no deseaba bajo ningunas circunstancias. Indudablemente es un hecho, según demuestra la prueba, que en el negocio de arroz no hay tal cosa técnica como *"good" fancy blue rose*. Existe un arroz *fancy blue rose,* y otro *extra fancy blue rose.* No obstante, los peritos del demandado demostraron que *"good" fancy blue rose* era una variedad o clase de arroz sólo ligeramente inferior al *extra fancy blue rose,* y así se entendía en Puerto Rico, y como hemos dicho, los indicios son que Spencer así también entendió el asunto. Por tanto, el hecho final en el caso es que Barasorda pasó un pedido por arroz "good fancy blue rose", y que Spencer le despachó arroz "fancy blue rose" que no era de la calidad del que Barasorda había ordenado. Podemos agregar a lo anteriormente dicho la suposición de que el arroz *fancy blue rose* estuviera clasificado entre 60 y 70, y que el "extra fancy" estuviera clasificado entre 70 y 80. Entonces podríamos decir que lo que Barasorda ordenó fué algo próximo al 70, mientras que lo que Spencer embarcó fué algo próximo al 60.

No estamos muy seguros del efecto que produjo en la prueba la actuación de la corte al eliminar algunas de las defensas de Barasorda. Este proceder fué probablemente erróneo, pero fuéralo o no, Barasorda tenía derecho, al defenderse de la reclamación de la Orange Rice Milling Company, a ofrecer testimonio o prueba tendiente a destruir la reclamación. Incumbía a la demandante probar un contrato válido existente.

La corte dijo que la palabra "good" describía la condición del arroz *fancy blue rose* más bien que una clase de arroz por sí misma, pero creemos que la prueba demuestra lo contrario.

Igualmente, la prueba indica que el certificado RMA era una clase distinta de arroz que caía dentro de la calidad "fancy blue rose".

Bajo ninguna circunstancia, según revelaba la prueba, Barasorda ordenó o pudo haber usado o vendido ventajosa-

mente el arroz que le fué despachado. En otras palabras, Barasorda no recibió lo que ordenó, y no surgió impedimento (*estoppel*) contra él.

Por tanto, *debe revocarse la sentencia apelada y declararse sin lugar la demanda.*