Pedro Pepín Delgado, menor de edad, representado por su padre con patria potestad Eduardo Pepín, demandante, apelado y apelante, *v.* Ready–Mix Concrete, Inc. y Maryland Casualty Company, demandadas, apelantes y apeladas.

Núm. 10006.—*Sometido:* Noviembre 18, 1949. *Resuelto:* Enero 10, 1950.

*F. Prieto Azúar,* abogado de las apelantes apeladas; *F. Fernández Cuyar,* abogado del apelado apelante.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Tanto el demandante como las demandadas han apelado de la sentencia dictada por el Tribunal de Distrito de San Juan condenando a éstas a pagar a aquél la suma de $5,000

por concepto de daños y perjuicios, más las costas y $500 para honorarios de abogado. Como la apelación del demandante se limita a sostener que la cuantía de la indemnización y de los honorarios es baja por de más, mientras que la de las demandadas impugna la totalidad de la sentencia, discutiremos en primer lugar los errores señalados por éstas.

■■ Al llamarse el caso para juicio en 9 de noviembre de 1948, las demandadas solicitaron de la corte desestimara la demanda por no haber el demandante contestado el interrogatorio servídole. La corte se negó a ello, así como a suspender el recurso. Esas negativas han sido objeto del primer señalamiento de errores. De los autos surge que en 18 de octubre de 1948 se radicó por las demandadas en la secretaría del tribunal inferior un interrogatorio dirigido al demandante. Al comenzar el juicio, las demandadas sostuvieron haber notificado por correo dicho interrogatorio al demandante y éste insistió en no haber recibido el mismo, aunque sí recordaba haberse encontrado incidentalmente con el letrado de las demandadas y haber hablado del mismo e indicádole que se ocuparía de él tan pronto lo viera y tan pronto se dispusiera a preparar el caso para juicio. No creemos que se cometiera el error imputado. Los interrogatorios a las partes están autorizados por la Regla 33 de las de Enjuiciamiento Civil. Los mismos deben contestarse por separado y totalmente, por escrito y bajo juramento, dentro de los quince días siguientes a su entrega. La parte requerida puede hacer objeciones a tales interrogatorios dentro de los diez días de la notificación y entrega de ellos, difiriéndose las contestaciones hasta que tales objeciones sean resueltas por la corte. La Regla 37(a) dispone, por otro lado, que al negarse una parte a contestar cualquier interrogatorio sometídole bajo la Regla 33, el proponente puede solicitar de la corte que dicte una orden obligando al requerido a que conteste; la 37(b) que si una parte se negare a contestar una pregunta después de habérselo ordenado la corte, tal negativa podrá ser considerada como desacato; y la 37(d) que si una

parte "*intencionalmente.  . . . . .* dejare de presentar y no-
tificar contestaciones a los interrogatorios sometidos de
acuerdo con la Regla 33, *después de habérsele notificado debi-
damente los mismos,* la corte mediante moción y notificación
podrá eliminar en todo o en parte cualquier alegación de esa
parte, o desestimar la acción o procedimiento o alguna parte
de los mismos, o registrar una sentencia en rebeldía contra
dicha parte." (Bastardillas nuestras.) En el presente caso,
sin embargo, el término de quince días a que alude la Regla
33 venció varios días antes del señalado para comenzar el
juicio. No obstante, las demandadas no actuaron inmediata-
mente que venció dicho término y dilataron su moción hasta
el momento mismo de llamarse el caso para juicio. No cree-
mos que al así actuar las demandadas desplegaran la debida
diligencia, ni que los autos demuestren que el demandante *de
manera intencional* dejara de contestar los interrogatorios
que aquéllas alegaron haber notificado por correo al deman-
dante y que éste reiteradamente insistió no había recibido.

▪▪ Se desprende además de los autos que radicada la
demanda en 8 de diciembre de 1947 las demandadas presenta-
ron siete días más tarde una moción para que se le suminis-
trara un pliego de particulares y que dicha moción fué dene-
gada por extensa resolución fechada el 9 de febrero siguiente
y que en ésta claramente se sugiere a las demandadas que
acudan al procedimiento de descubrimiento de prueba, al de
examen de testigos y partes o al de interrogatorios,[1] proce-
dimientos que a juicio del tribunal sentenciador habían sus-
tituído el pliego de particulares generalmente usado con
anterioridad a la vigencia de las reglas. No obstante, no fué,
según ya hemos dicho, hasta el 18 de octubre de 1948 que las
demandadas radicaron su aludido interrogatorio. Asimismo
se desprende de los autos que si bien el juicio comenzó el 9
de noviembre, el mismo, luego de desfilar casi la totalidad de
los testigos del demandante y parte de la prueba del deman-
dado, fué pospuesto para tres días más tarde. En ese in-

[1] Véase *Canino* v. *Tribunal de Expropiaciones,* ante, pág. 152.

tervalo las demandadas pudieron fácilmente haber logrado de la corte una orden para someter al demandante a un examen médico,(1a) pudiendo así prepararse, de haberlo deseado, para controvertir la prueba pericial aducida por el demandante al efecto de que éste padecía de epilepsia y de los otros males a que aludió la prueba que ya había desfilado.

Interpretando la Regla 37 en el caso de *Valenstein* v. *Bayonne Bolt Corp.*, 10 Fed. Rules Serv. 696, se hizo constar que "surge claramente que el contexto de la Regla 37 otorga amplia discreción a la corte para dictar cualquier resolución que considere justa a la luz de los hechos de cada caso específico."

Consideramos que a luz de los hechos que surgen de los autos el tribunal inferior procedió acertadamente al actuar en la forma en que lo hizo.

■■ Por otra parte, tampoco erró el tribunal a quo al negarse a suspender el juicio. Al así solicitarlo las demandadas, la parte demandante se opuso e hizo constar que a instancias de aquéllas el caso había sido suspendido en ocasiones anteriores, que sus testigos estaban en sala y que siendo éstos gente pobre una nueva suspensión del recurso les acarrearía gastos y trastornos. La solicitud de las demandadas fué denegada y el juicio comenzó en seguida. Durante el curso del mismo las demandadas insistieron reiteradamente en su moción para desestimar o para que se suspendiera el caso. Empero, la suspensión del juicio es cuestión que descansa en la sana discreción del tribunal inferior y la resolución que al efecto se dicte será respetada por nosotros, a menos que se nos demuestre que al actuar en la forma en que lo hizo hubo abuso de tal discreción. *Coll* v. *Tribunal de Distrito*, 68 D.P.R. 122; *Amy* v. *Barceló, Juez*, 59 D. P. R. 661; *López* v. *Flores*, 50 D.P.R. 600; *Pontón* v. *Sucrs. de Huertas González*, 42 D.P.R. 529. No se nos ha demostrado que hubiera tal abuso en este caso.

---

(1a) Véanse la Regla 35 y *Bahr* v. *American Railroad Co.*, 61 D.P.R. 917.

■ En segundo lugar imputan las demandadas al tribunal sentenciador haber cometido error gravemente perjudicial a ellas al resolver que la preponderancia de la evidencia favorecía al demandante y al no fallar, por lo menos, que éste incurrió en negligencia contribuyente. La prueba del demandante tendió a demostrar que el día 23 de mayo de 1947, como de doce y media a una de la tarde, el menor demandante se dirigía en una bicicleta por la Avenida Borinquen del Barrio Obrero, de Santurce, hacia el sitio conocido por "Las Monjas", donde reside, luego de obtener un piñón que le había suplicado le comprara el dueño de una agencia de bicicletas; que al cruzar la intersección que forma la calle "Haydée Rexach" con la indicada avenida el demandante, quien iba despacio en su bicicleta, se encontró con un pequeño camión estacionado frente al colmado–almacén Camacho; que al pasar junto a dicho camión él sintió un ruido que resultó ser el producido por el camión de la demandada Ready–Mix Concrete, Inc. y que en ese momento mismo el demandante fué golpeado por este último camión, teniendo él que ser llevado inmediatamente al Hospital Municipal de Santurce, donde fué operado y donde recibió tratamiento médico, y que a consecuencia del accidente el demandante ha quedado totalmente incapacitado. La teoría de las demandadas, según la prueba aducida, fué al efecto de que mientras el camión de la Ready–Mix discurría por la referida avenida, despacio y tomando las necesarias precauciones, al llegar a la intersección que forma la misma con la calle "Haydée Rexach", el demandante salió súbitamente en su bicicleta desde esa calle y que al echarse el demandante hacia su izquierda debido a un camión que se hallaba estacionado a la derecha, el demandante chocó con el camión de la Ready–Mix Concrete, Inc. surgiendo así el accidente. El tribunal inferior, en su relación del caso y opinión llega, entre otras, a las siguientes conclusiones de hecho:

"La demandada Ready-Mix Concrete, Inc. es dueña del camión H–5675, el cual usa, junto con muchos otros, en la explotación de su

empresa de venta de cemento mezclado. El día 23 de mayo de 1947, entre doce de la mañana y una de la tarde, dicho camión era manejado y conducido por Julio Castro Rivera, un empleado de dicha empresa que actuaba entonces en el curso de sus labores como tal empleado.

"En dicho día el demandante había salido en bicicleta a comprar un piñón en una agencia de alquiler de bicicletas, sita al lado del establecimiento 'La Hípica', en una de las calles transversales de la Avenida Borinquen, en Barrio Obrero, y como a las doce y media de la tarde regresaba a su casa sita en el sitio 'Las Monjas' de Hato Rey. Inmediatamente después de cruzar la intersección que forman la Avenida Borinquen y la Calle Haydee Rexach, mientras pasaba a un camión que estaba detenido a su extrema derecha frente al Colmado o Almacén Camacho, el demandante fué arrollado por el 'truck' de la Ready–Mix Concrete, Inc. el cual venía detrás de la bicicleta y en la misma dirección de éste, o sea de oeste a este.

"En el momento del accidente no había tráfico alguno en dicha sección de la Avenida Borinquen, aparte del camión de la demandada, la bicicleta del demandante y el camión estacionado. A la izquierda del 'truck' de la demandada, cuando comenzó a pasar a la bicicleta, había suficiente espacio libre para al menos dos camiones más. El 'truck' de la demandada, no obstante, pasó a la bicicleta tan cerca de ésta que, con algún artefacto de su parte posterior derecha, probablemente la canal que se usa para echar el concreto mezclado, chocó con el cuerpo del demandante, dándole un golpe en el lado izquierdo de la cabeza y lanzándole al pavimento junto con la bicicleta, no pudiendo ser detenido hasta llegar frente a un árbol de mangó, a la izquierda de la avenida, como a 50 yardas más allá del sitio del accidente.

"Al cruzar la intersección de calles ya mencionada, el conductor del camión de la demandada no tocó 'claxon', ni señal alguna de alarma, a pesar de que dicho camión era conducido a una velocidad peligrosa (de 20 a 25 millas por ahora) (sic) dado su tamaño, su maquinaria y su peso, y especialmente dado el hecho de que iba a pasar al ciclista y al camión estacionado.

"El camión de la demandada arrolló al demandante por razón de haber querido innecesariamente pasar muy pegado a la bicicleta, dejando tan poco espacio entre el camión en movimiento y el camión estacionado, que atrapó la bicicleta entre ambos vehículos."

La cuidadosa lectura que hemos hecho de la transcripción de evidencia nos convence de que el tribunal a quo estuvo

justificado en sus conclusiones. *Jiménez* v. *Fletcher,* 67 D.P.R. 165; *Robles* v. *Guzmán,* 67 D.P.R. 718. Tampoco se ha cometido el segundo error señalado.

█ En el párrafo sexto de la demanda se alega que el camión causante del daño "estaba asegurado por la demandada Maryland Casualty Co., la cual había expedido una póliza cubriendo el riesgo de daños a terceras personas, que estaba en vigor en la fecha del accidente." En la contestación radicada por las demandadas éstas "admiten que la Maryland Casualty Co. expidió la póliza a que el apartado 6 de la demanda hace mención, pero afirmativamente alegan que la misma se expidió para beneficio de la codemandada Ready–Mix Concrete, Inc. y no para beneficio de terceros." No hay duda de que bajo nuestro derecho la parte que sostiene la afirmativa de una cuestión es la llamada a ofrecer evidencia para probarla. Sin embargo, como la contención del demandante respecto a que el camión de la demandada Ready–Mix estaba asegurado con la Maryland Casualty Co. fué admitida por las demandadas, aquél quedó relevado de ofrecer prueba al efecto, incumbiendo entonces a dichas demandadas probar su aseveración de que la póliza en cuestión no se había expedido para beneficio de terceros. *Freiría & Co.* v. *Cortés Hnos. & Co.,* 32 D.P.R. 127. Toda vez que las demandadas no adujeron evidencia alguna para sostener su referida defensa, el tribunal inferior no cometió error al hacer a la demandada Maryland Casualty Co. solidariamente responsable de la sentencia dictada.([2])

█ Ya en las postrimerías del juicio, las demandadas solicitaron del tribunal que practicara una inspección ocular y éste accedió a ello. Dicha inspección se efectuó, mas de los autos no aparece que las partes estuvieran presentes mientras se practicaba la misma. ni que se levantara acta en relación con la inspección. La ausencia del acta y el no hacerse constar en la opinión emitida el resultado de la inspec-

---

([2]) Véase la sección 175 de la Ley núm. 66 de 1921 (pág. 523), según fué enmendada por la núm. 19 de 15 de abril de 1929 (pág. 161).

ción ocular practicada han sido objeto del cuarto señalamiento de errores. Sin embargo, no existe el mismo. Si las demandadas creyeron que debía levantarse un acta, fácil les hubiera sido solicitar del tribunal a quo que así lo hiciera. Por el contrario, suscitan ahora por primera vez la cuestión ante nos. Reiteradamente se ha decidido por este Tribunal que al practicarse una inspección ocular la mejor práctica aconseja que se levante un acta de la misma, que al no cumplirse con tal requisito la parte que pudiera resultar perjudicada puede solicitar de la corte inferior que así lo haga y que en ausencia de tal solicitud, o de una demostración al efecto de que el error que pueda haberse cometido al no levantarse el acta fué perjudicial, no se revocará por tal omisión la sentencia que se dicte. *Lampón* v. *Línea Romero,* 60 D.P.R. 212; *Figueroa* v. *Vives & Maxan,* 46 D.P.R. 240, 242; *Sucn. Rivera* v. *González,* 33 D.P.R. 1014; *Lamboy* v. *Solo et al.,* 29 D.P.R. 905. En el presente caso no hay constancia de que se hiciera semejante solicitud ni de que la ausencia de tal acta de la inspección constituyera un error perjudicial a las demandadas.

El quinto y último error señalado por las demandadas es al efecto de que el tribunal inferior erró al condenarles a satisfacer al demandante la suma de $5,000 por concepto de daños y perjuicios y la de $500 por concepto de honorarios de abogado. Toda vez que el demandante sostiene, por otra parte, que las sumas concedidas son insuficientes, discutiremos este error señalado por las demandadas y la apelación del demandante conjuntamente.

La prueba demuestra, en adición a lo ya expuesto, que a la fecha del accidente el demandante tenía 16 años de edad, era un muchacho robusto y saludable y cursaba el sexto grado de escuela elemental; que con motivo del accidente éste sufrió una fractura deprimida del cráneo; que al ser conducido al hospital se le operó inmediatamente, quedando recluído allí por espacio de unos doce días; que recibió extensos tratamientos y curaciones; que en parte del lado iz-

quierdo del cráneo hay ausencia de materia ósea y que si bien el sitio ha sido cubierto por la piel se nota, sin embargo, una depresión del tamaño de un medio dólar, y se percibe ahí tan sólo materia blanda; que a consecuencia de la lesión recibida el menor ha quedado enteramente incapacitado y muestra síndromes epilépticos, y ha sufrido vértigos, mareos y vahidos, teniendo según la prueba pericial lo que en medicina califican de "petite maladie"; que el demandante era estudiante aprovechado y le gustaban los deportes; que la lesión recibida le impide dedicarse a los mismos; que no puede continuar sus estudios ni dedicarse a trabajo fuerte; que tampoco puede leer como lo hacia antes del accidente; y que a la fecha del juicio continuaba asistiendo al hospital cada dos semanas para observación y tratamiento.

El valor del dólar, comparado con el que tenía antes de iniciarse la Segunda Guerra Mundial, ha depreciado en verdad. Su poder adquisitivo es en realidad mucho menor. De ahí que las indemnizaciones concedidas por nosotros en los últimos años hayan sido en muchos casos algo más altas que en el pasado. *Rojas* v. *Maldonado,* 68 D.P.R. 818; *Meléndez* v. *Metro Taxicabs,* 68 D. P.R. 766; *Graniela* v. *Yolande, Inc.,* 65 D.P.R. 107. Dados los daños sufridos por el demandante —quien de persona joven, estudiosa, activa y útil para la sociedad se ha convertido en una que sufre frecuentes dolores de cabeza y vahidos, que padece de la "petite maladie", que nunca puede dedicarse a trabajo activo, ni a los deportes, ni puede leer, ni trabajar—la indemnización concedídale es indiscutiblemente insuficiente. Debe concedérsele a nuestro juicio la suma de $10,000 por concepto de daños y perjuicios.

Tomando en consideración la clase de caso de que se trata y la labor total realizada, creemos, sin embargo que la cantidad de $500 concedida para honorarios de abogado es razonable.

*Debe modificarse la sentencia apelada en la forma indicada y, así modificada, confirmarse.*