CRISTÓBAL DÁVILA, demandante y apelado, *v.* FRANCISCO TORRES, JR., demandado y apelante.

Núm. 8028.—*Sometido:* Mayo 22, 1940. *Resuelto:* Noviembre 12, 1940.

*Leopoldo Tormes García,* abogado del apelante; *R. Hernández Matos,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

Cristóbal Dávila era un comerciante que vendía provisiones y artículos similares tanto al por mayor como al detall.

Francisco Torres, Jr., era un comerciante al detall y se dedicaba al tráfico de la misma clase de artículos que Cristóbal Dávila.

Según la demanda, Cristóbal Dávila vendió a Francisco Torres mercancías y efectos de comercio ascendentes a $421.06. Igualmente, según la demanda y la prueba, la cuenta

no fué pagada. Un pleito en la corte municipal tuvo por resultado una sentencia en favor del demandante, y la Corte de Distrito de Ponce dictó en apelación una decisión similar. En la corte de distrito tuvieron lugar varios procedimientos, como por ejemplo, una moción pidiendo un pliego de particulares y algo similar, mas la única verdadera cuestión entre las partes fué si la acción había prescrito o no.

■■ El artículo 1867 del Código Civil (ed. 1930) en su inciso 4 provee:

"Por el transcurso de tres años prescriben las acciones para el cumplimiento de las obligaciones siguientes:

\* \* \* \* \* \* \*

"4. La de abonar a los posaderos la comida y habitación, y a los mercaderes el precio de los géneros vendidos a otros que no lo sean, o que siéndolo se dediquen a distinto tráfico."

La cuestión esencial en este caso es si el tráfico a que se dedica un comerciante al por mayor es distinto de aquél a que se dedica un traficante al detall. La corte de distrito en su decisión dijo que las partes habían hecho un esfuerzo muy interesante para resolver el problema. Cada una de ellas cita las definiciones que dan los diccionarios de la palabra "tráfico" y de la palabra "mercader", etc. Cada una de ellas cita igualmente las decisiones de este tribunal. El efecto total en nuestras mentes es tal que creemos que el caso merece un examen *de novo*.

El único comentario que hemos hallado en el artículo equivalente del Código Civil Español es el siguiente:

"Como resulta de la mera comparación de sus términos, se han ampliado en el Código los límites de esta regla de prescripción establecidos en las leyes de la Novísima Recopilación que hemos indicado antes, extendiéndola a todas las ventas realizadas por todos los mercaderes en general, con excepción tan sólo de las hechas a los comerciantes que se dediquen a la misma clase de tráfico, cuya excepción se funda en una razón de conveniencia fácilmente apreciable en beneficio del comercio para facilitar el tráfico y el desenvolvimiento del mismo." Manresa, Cód. Civ., vol. 12, pág. 864.

Podemos deducir que la razón para aplicar esta regla de tres años se debe a la máxima *Interest republicæ ut sit finis litium,* y que las negociaciones entre comerciantes de distinto tráfico son mucho más frecuentes que entre comerciantes que tienen la misma clase de tráfico. Inmediatamente resulta que los comerciantes al por mayor y los traficantes al detall tienen necesariamente muchos negocios entre sí. Probablemente no hay mayores negocios entre comerciantes que aquéllos que se hacen entre un traficante al por mayor y un detallista.

Un comerciante al por mayor, por ejemplo, de ordinario conduce esa parte de su negocio en forma muy distinta a como lo hace un hombre que se dedica exclusivamente al negocio al por menor. Si el razonamiento aducido por una u otra parte es correcto como en un cincuenta por ciento, entonces quizá la máxima *Ad ea quae frequentius accidunt jura adaptantur* es aplicable.

La idea de los estatutos de prescripción en general es que las reclamaciones terminen. Si las negociaciones entre un traficante al por mayor y un detallista son mucho más frecuentes que cualquiera otra clase de tráfico, la máxima tiene algún peso. Creemos que el negocio de un traficante al por mayor es distinto al de un detallista y que la prescripción de tres años debe cubrir el caso del demandado.

Da peso a este criterio el proceder de la asamblea legislativa al fijar las patentes a ser pagadas por los traficantes a los municipios. La Ley núm. 26 de marzo 28, 1914 (Leyes de 1913–14, pág. 181), colocó a los establecimientos al por mayor en una clase de por sí sin demostrarse la clase de negocio, mientras que a las tiendas al detall las clasificó de acuerdo con la naturaleza del negocio, por ejemplo: "tiendas de mercancías secas, colmados, *tiendas de provisiones,* mueblerías, farmacias, droguerías, ferreterías, tiendas de sombreros, etc." (Bastardillas nuestras.)

La sección íntegra lee así:

"Sección 2.—Los negocios e industrias sobre los cuales puede imponerse la patente que prescribe esta Ley, son los siguientes:

"Grupo A.—Establecimientos al por mayor, tiendas mixtas, tiendas de mercancías secas, colmados, tiendas de provisiones, mueblerías, farmacias, droguerías, ferreterías, tiendas de sombreros, tiendas de calzado, tiendas de efectos para caballeros, librerías o establecimientos de encuadernación de libros, bazares, tiendas de bicicletas o efectos para las mismas, quincallerías, bujerías, cafés, hoteles, restaurants, joyerías, establecimientos para la venta de automóviles o materiales para éstos o para guardar y reparar automóviles, tiendas de efectos de escritorio, confiterías, salones para la venta de helados, dulcerías, establecimientos para la venta de efectos de óptica, dentales o eléctricos, establecimientos para la venta de madera en bruto o elaborada, casas de huéspedes, fondas, puestos de leche, salones públicos de billar o de bolos, teatros, cinematógrafos y espectáculos semejantes para diversión del público, relojerías, camiserías, talleres para componer zapatos con maquinaria, carpinterías, trenes de lavado al vapor o fuerza eléctrica, fábricas de hielo, hojalaterías, panaderías, establecimientos para la venta de objetos de plomería, barberías, establecimientos fotográficos, casas de empeño, agencias funerarias, imprentas o casas editoras, talleres de herrar, caballerizas dedicadas a cuidar o alquilar caballos y coches, trasporte de personas o carga, mediante pago por automóviles, carros, carretas, coches o quitrines, servicio de exprés (sic), vendedores ambulantes, establecimientos de limpieza, tintorerías, herrerías.

"Grupo B.—Bancos, casas de banca particulares, plantas de alumbrado o fuerza eléctrica, ferrocarriles, tranvías eléctricos, tranvías de sangre, almacenes públicos, hipódromos, compañías de teléfono, hornos de cal, fundiciones, litografías, aserraderos al vapor y movidos por fuerza eléctrica o hidráulica, talleres de máquinas, tenerías, tahonas para pilar y lustrar café, muelles particulares, compañías o agencias de anuncios comerciales, fábricas de sombreros movidas por maquinarias, fábricas de conservas alimenticias y fábricas que fabriquen cualesquiera de los siguientes artículos: chocolate, baúles, fósforos, aguas de soda y carbonatadas, pastas para sopa, jabón, velas, colchones, aceite de malagueta, aceite de castor, aceite de coco, arneses, sillas de montar, carros, coches, carretones, mosaicos, losetas y otros productos de cemento, ladrillos, gas, efectos de alfarería y cajas de tabacos.

"Grupo C.—Las industrias de molinos de azúcar y mieles y los negocios de corredores, comerciantes comisionistas, agentes con oficinas permanentes, y corredores de bienes raíces."

· La ley de 1914 fué declarada en vigor por la Ley Municipal en 1928 (Ley núm. 53 de 1928, pág. 335).

La Ley núm. 106 de marzo 13, 1913 (pág. 152), fijó una contribución por patente de $200 a los comerciantes al por mayor y a la mayoría de los otros establecimientos ya mencionados que hacían negocios en menor escala, generalmente como de $60. Probablemente la razón por la cual no se fijó la misma cantidad para los distintos negocios en 1914 fué porque se impuso un tipo por cada $1,000 de negocio y los mayoristas de ordinario tendrían que pagar más que los detallistas.

*Debe revocarse la sentencia apelada y declararse sin lugar la demanda.*