CRISTÓBAL DÁVILA, demandante y apelado, v. FRANCISCO
TORRES, JR., demandado y apelante.

Núm. 8028.—*Sometido:* Mayo 16, 1941.* *Resuelto:* Junio 13, 1941.

*Leopoldo Tormes García,* abogado del apelante; *R. Hernández Matos,*
abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del
tribunal.

Este recurso fué resuelto por sentencia de noviembre 12,
1940, revocando la apelada. *Dávila* v. *Torres,* 57 D.P.R.
606.

Presentada moción de reconsideración, se oyó a las par-
tes sobre la procedencia de la misma. En febrero tres se

---

* NUEVA VISTA del caso a virtud de haberse reconsiderado y dejado sin efecto la
sentencia de este tribunal de noviembre 12, 1940 (57 D.P.R. 606).

dejó sin efecto la sentencia de noviembre doce, señalándose una nueva vista del recurso que se celebró en mayo 5 con la sola asistencia del apelante, concediéndose al apelado quince días para contestar por escrito el alegato adicional del apelante, como en efecto lo hizo.

El pleito se originó por demanda radicada en la Corte Municipal de Ponce por Cristóbal Dávila, contentiva de las siguientes alegaciones:

"2°.—Que hace algún tiempo que el demandante vendió y entregó al demandado y éste compró y recibió, en cuenta corriente entre ambos, mercancías y efectos de comercio, y liquidada recientemente dicha cuenta corriente, la misma arrojó un saldo a favor del demandante montante a la suma de $421.06 el cual saldo fué servido al demandado y aprobado y aceptado por éste.

"3°.—Que a pesar de estar vencida dicha cuenta, el demandado no ha pagado el referido saldo de $421.06 al demandante ni en todo ni en parte y se niega a pagárselo a pesar de las gestiones de su cobro y de ser una deuda líquida, vencida y exigible."

El demandado contestó:

"1.—Se acepta el hecho primero de la demanda, excepto que el demandante sea vecino de Ponce, y sí de Cayey.

"2.—El demandado acepta que el demandante Cristóbal Dávila de su almacén como traficante de provisiones al por mayor establecido en Cayey, vendió al demandado como traficante al detall de provisiones establecido también en Cayey, artículos de comercio durante un período de tiempo con anterioridad al 30 de diciembre de 1931, y que en esa misma fecha el saldo de esa cuenta de provisiones así vendidas por el demandante al demandado, ascendía a $421.06, alegando como defensa el demandado que ese importe le fué pagado por el demandado al demandante, sin que este demandado adeude nada por ningún concepto al demandante actualmente.

"3.—Se niega el hecho tercero de la demanda, y se sostiene en contrario que el demandado no adeuda nada al demandante por el concepto a que se refiere la demanda, ni por ningún otro concepto."

Y como defensas especiales alegó que la demanda no aducía hechos bastantes para constituir una buena causa de acción y en todo caso que la acción ejercitada en ella había

prescrito de acuerdo con el apartado cuatro del artículo 1868 del Código Civil.

Fallado el pleito, fué en apelación a la corte del distrito. Celebrado el nuevo juicio que ordena la ley, dicha corte declaró la demanda con lugar y el demandado recurrió para ante este Tribunal Supremo.

La revocación de la sentencia apelada se decretó a base de la existencia de la prescripción. "La cuestión esencial en este caso es si el tráfico a que se dedica un comerciante al por mayor es distinto de aquél a que se dedica un traficante al detall", expusimos en aquel entonces, y transcribiendo la ley, refiriéndonos a las definiciones de las palabras "tráfico" y "mercader" citadas por las partes y aplicando las máximas *Interest republicæ ut sit finis litium* y *Ad ea quæ frequentius accident jura adaptantur,* dijimos: "Creemos que el negocio de un traficante al por mayor es distinto al de un detallista y que la prescripción de tres años debe cubrir el caso del demandado." Y siguiendo ese criterio resolvimos el pleito sin una convicción absoluta como puede deducirse de lo expresado antes de aplicar la última de las máximas, a saber: "Si el razonamiento aducido por una u otra parte es correcto como en un cincuenta por ciento . . . ."

Al presentarse la moción de reconsideración dudamos seriamente de si la regla establecida estaba bien fundada y reabrimos el caso para una nueva argumentación. A virtud de ella hemos quedado convencidos de que en efecto no lo está, y siendo ello así, nuestro claro deber consiste en revocarla.

Los hechos quedaron establecidos por medio de estipulación. Cristóbal Dávila, el demandante, a la fecha en que vendió provisiones al demandado Francisco Torres, Jr. era un *comerciante* establecido en Cayey en el *tráfico de provisiones en general, al por mayor y al detall,* y Francisco Torres, Jr. era un *traficante de provisiones al detall* también establecido en Cayey. El *negocio de compraventa de provisiones realizado* lo fué entre el primero como *traficante en provi-*

*siones al por mayor* y el segundo como *traficante en provisiones al detall.*

La ley invocada por el demandado es el número 4 del artículo 1867 del Código Civil, ed. 1930. Ordena:

"Por el transcurso de tres años prescriben las acciones para el cumplimiento de las obligaciones siguientes:

.　　　.　.　　.　　　.　　　.

"4. La de abonar a los posaderos la comida y habitación, y a los mercaderes el precio de los géneros vendidos a otros que no lo sean, o que siéndolo se dediquen á distinto tráfico."

Que ambas partes eran mercaderes, esto es, comerciantes, no ofrece duda alguna, y que no se dedicaban a distinto tráfico si que al mismo en diferente escala, es evidente.

*Mercader* equivale a *comerciante* que es la persona que con capacidad legal se dedica al ejercicio del comercio, o trata, bien al por mayor, o al por menor, sobre géneros vendibles, expresa la Enciclopedia Jurídica Española. Tomo XXII, pág. 235.

Y *tráfico* es la acción de *traficar* que, según la misma autoridad, consiste en comerciar o negociar con el dinero, comprando y vendiendo o haciendo otros tratos. Enciclopedia Jurídica Española, Tomo XXX, pág. 89.

¿Era distinto el tráfico a que se dedicaban demandante y demandado? Ya hemos dicho que no. Ambos se dedicaban al *tráfico de provisiones* que en esta isla quiere decir comestibles, víveres, sólo que lo hacían en diferente escala y ello no implica distinción en la substancia del negocio. Lo mismo se trafica en un determinado artículo al por mayor que al detall, se dice en 63 C. J. 762. Y más específicamente a la página 760:

"Se entiende por 'tráfico' el traspaso de artículos o mercadería de una persona a otra a cambio de un equivalente en artículos o dinero;... Incluye necesariamente todos los incidentes de tal negocio e industria, al por mayor o al detall, y la entrega del objeto del tráfico."

Como bien razonó la corte de distrito en la opinión que sirvió de base a su sentencia:

"'Distinto tráfico' es diferente comercio. Pero, ¿qué se entiende por *distinto tráfico* o diferente comercio? ¿Significa acaso que por el hecho de dos comerciantes dedicarse, uno, al comercio al por mayor y el otro al comercio al detall, ello sea suficiente para clasificarlos en diferentes campos comerciales? Entendemos que no. Un comerciante al por mayor en perfumería se encuentra en distinto tráfico a un comerciante al por mayor en pieles; un *comerciante, mercader o traficante* al detall en ferretería se encuentra en *distinto tráfico o diferente comercio* al comerciante al detall en productos farmacéuticos. El hecho que sea *al por mayor o al detall* no quiere decir ni significa que su comercio sea distinto o diferente."

La cuestión en verdad había sido ya resuelta por esta propia corte en *González* v. *Aldarondo,* 47 D.P.R. 156, 158, aunque planteada por otro motivo y sin discutir si el negocio se realizaba al por mayor o al detall, en los siguientes términos:

"Sucede que tanto el cedente del demandante como el demandado eran comerciantes en provisiones que se dedicaban al mismo tráfico, y por ende, la prescripción de tres años no les es aplicable. Bajo estas circunstancias, convenimos con el apelado en que el Código Civil no fija término especial de prescripción alguno y que la causa de acción subsistiría durante un período de quince años."

Lo prescrito en la Ley de Patentes de 1914 no tiene el alcance que le atribuye el demandado. El propósito de esa ley—núm. 26 de marzo 28, 1914 (Leyes 1913-14, pág. 181)—fué el de individualizar los diferentes comercios a fin de graduar la cuantía de la patente en armonía con el volumen de sus negocios, no el de resolver que comerciantes en los mismos géneros se dedicaran a negocios substancialmente diferentes por el hecho de traficar al por mayor o al detall.

El porqué de la excepción, el motivo que tuvo el legislador para comprender en el período prescriptivo sólo el precio de los géneros vendidos por los comerciantes a otros que no lo fueron o que siéndolo se dedicaran a distinto trá-

fico, surge del siguiente comentario de Manresa al precepto equivalente del Código Civil Español:

"Como resulta de la mera comparación de sus términos, se han ampliado en el Código los límites de esta regla de prescripción establecidos en las leyes de la Novísima Recopilación que hemos indicado antes, extendiéndola a todas las ventas realizadas por todos los mercaderes en general, *con excepción tan sólo de las hechas a los comerciantes que se dediquen a la misma clase de tráfico, cuya excepción se funda en una razón de conveniencia fácilmente apreciable en beneficio del comercio para facilitar el tráfico y el desenvolvimiento del mismo.*" 12 Manresa, Comentarios al Código Civil, 791. (Bastardillas nuestras.)

No es igual la relación de confianza y continuidad que existe entre comerciantes dedicados al mismo tráfico que realizan negocios entre sí, que la que surge de las transacciones que los comerciantes realizan con otras personas que no lo son o que trafican en ramos diferentes. De ahí la distinción.

■ Además para que una regla de prescripción pueda aplicarse a determinada obligación, debe ésta estar claramente comprendida dentro de ella, ya que la aplicación produce el efecto de extinguirla en perjuicio de la parte en beneficio de la cual debía cumplirse. Y por lo menos tendría que reconocerse en este caso que la aplicación de la regla a los hechos del mismo no es clara de acuerdo con su letra y con su espíritu.

"...Por otra parte, es un principio muy conocido que un estatuto de prescripción no debe ser aplicado a casos que no están claramente dentro de sus disposiciones; no debe ser ampliado mediante interpretación...." 37 C. J. 689, 691.

■■ No obstante haber reconocido el demandado apelante en su alegato original que sirvió de base a la primera vista del recurso, que no le asistía la razón en su segundo señalamiento de error, ahora, en su alegato adicional sostiene que le asiste y levanta además una cuestión que no suscitó en la corte inferior, la de novación.

Como se recordará el demandado en su contestación alegó que había pagado la deuda que se le reclamaba. Durante el juicio ambas partes estipularon que se diera por probado lo que sigue:

"Que los negocios de compra y venta de provisiones entre demandante y demandado, se llevaban en cuenta corriente, y que esa cuenta corriente fué cerrada en veintitrés...de diciembre de mil novecientos treinta y uno.....por la suma de $421.06. Que por esa fecha, el demandado Francisco Torres, Jr., endosó a favor y orden del demandante don Cristóbal Dávila, y entregó al mismo, en pago de dicho saldo, dos obligaciones, la primera por $300 suscrita por Evaristo Ostolaza en agosto nueve de mil novecientos treinta y uno, a favor y orden del demandado Francisco Torres, Jr., y la segunda suscrita por Agustín y J. M. Aponte, en Cayey, Puerto Rico, en agosto veinticuatro de mil novecientos treinta y uno, por la suma de $200, ambas dirigidas a Tabacaleros de Cayey, Inc., en Cayey, Puerto Rico, y que dicen así:

" 'Tabacaleros de Cayey, Inc.—Cayey, P. R.—Señores: Sírvanse pagar a Francisco Torres, Jr., o a su orden en su domicilio de este pueblo, la cantidad de trescientos dólares ($300) del sobrante que pueda resultar a mi favor cuando se venda o liquide el tabaco que tengo depositado en sus almacenes. Atentamente, (Firmado) Evaristo Ostolaza.'

" 'Tabacaleros de Cayey, Inc., Cayey, P. R.—Señores: Sírvanse pagar a Francisco Torres, Jr., o a su orden en su domicilio de este pueblo, la cantidad de doscientos dólares del sobrante que pueda resultar a mi favor cuando se venda y liquide el tabaco que tengo depositado en sus almacenes. Atentamente, (Firmado) Agustín y J. M. Aponte.'

"Que Cristóbal Dávila no gestionó judicialmente el cobro del importe de dichas dos obligaciones, pero hizo gestiones administrativas para su cobro, extrajudicialmente y no cobró sus importes por la quiebra del girado."

Luego se llamó a declarar al testigo Mario Torres. Repreguntado por el demandado, contestó:

"¿Las obligaciones esas suscritas por Ostolaza y por Agustín y J. M. Aponte, en poder de quién se encuentran?—Deben estar en poder de la Corte Municipal.—.....—¿Cuando Torres endosó, el demandado, a Cristóbal Dávila las dos obligaciones, para qué lo

fueron?—Para que tan pronto como fueran cobradas se abonaran a la cuenta.—¿Cristóbal Dávila negoció eso para alante?—No se negociaron; no son documentos; no es un pagaré, fué una orden solamente.''

Y a preguntas del demandante, respondió:

''¿Usted sabe si el tabaco depositado por Evaristo Ostolaza fué vendido?—Fué vendido por Tabacaleros de Cayey.—¿Le sobró algo a Evaristo Ostolaza?—Quedó a deber un pico.—¿A Agustín y J. M. Aponte, sabe si les sobró algo?—A uno de ellos le sobró un pico muy pequeño; como veinticinco o treinta pesos.—¿Y al otro?—No le sobró nada.''

El propio demandado declaró, en parte, como sigue:

''¿Sobre esas dos obligaciones; la suscrita por Evaristo Ostolaza y la de Agustín y J. M. Aponte, a favor suyo y traspasadas por usted a Cristóbal Dávila, usted tuvo algo que ver con Cristóbal Dávila en el treinta y uno?—En esa época el señor Cristóbal Dávila me llamó y me dijo que si podía conseguirle dos obligaciones de las que estaban con el Banco Tabacalero, para cubrir la cuenta que yo le debía. Entonces le dije al señor Cristóbal Dávila que si aceptaba esas órdenes en pago de lo que le debía, y entonces él me dijo que sí. Entonces yo le dije: 'dentro de dos o tres días trataré de conseguirle las órdenes.' Entonces hablé con los señores Evaristo Ostolaza, que me debía una cuenta en mi establecimiento y con los señores Agustín Aponte y José M. Aponte y ellos me dieron dos obligaciones.—...—¿Después de entregadas a don Cristóbal, volvió usted a hablar sobre esas obligaciones?—Entonces, cuando supe lo del Banco Tabacalero con el señor Evaristo Ostolaza y Agustín Aponte, de acuerdo con la liquidación de tabaco que esperaban, entonces hablé con el señor Cristóbal Dávila y le dije: 'bien, don Cristóbal, vamos a ver qué gestión se puede hacer para el cobro de este dinero', y entonces él me contestó: 'tengo esas obligaciones con el Banco Territorial', y al contestarme eso le dije: 'bien, si las ha negociado al Banco Territorial, es que el Banco Territorial las ha aceptado', y entonces no hablé nada más.''

La corte de distrito resolvió que la entrega de las órdenes de que se trata no podía considerarse como el pago definitivo de la deuda y que no habiendo podido hacerse efectivas, la obligación subsistía. Y tuvo razón a nuestro juicio.

La realidad es, como sostiene el demandante apelado en su alegato contestando el adicional del demandado apelante, que las órdenes no se tradujeron en dinero. Hablando por sí mismas, las órdenes dicen que lo que se cede es lo que sobre después de liquidar el tabaco que le correspondía a sus firmantes y sabemos, por la evidencia, lo ocurrido.

Tampoco existe la novación. Para que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles.

Por el hecho de que el demandante aceptara las dos órdenes, no se produjo un cambio de deudor. El efecto de la entrega fué el de dejar en suspenso la acción del demandante para reclamar el saldo de su cuenta. Si las órdenes se hubieran cumplido, la obligación del deudor se hubiera extinguido. No lo fueron ni pudieron serlo y la obligación quedó en pie. Artículo 1124 del Código Civil, ed. 1930.

No habiendo cometido la corte de distrito ninguno de los errores que se le atribuyen, *el recurso interpuesto contra su sentencia debe ser declarado sin lugar, quedando la sentencia confirmada.*