PUERTO RICO HOME APPLIANCES CORPORATION, demandante y apelada, *v.* UNIVERSAL FURNITURE COMPANY, INC., demandada y apelante.

Número 11098.

*Sometido:* 2 de abril de 1954. *Resuelto:* 11 de junio de 1954.

*Enrique Igaravídez,* abogado de la apelante; *Rodríguez Ema &
Rodríguez Ramón,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

Éste es un pleito iniciado por la Puerto Rico Home Appliances Corporation contra la Universal Furniture Co., Inc. en cobro de dinero. Luego de un juicio en los méritos, el tribunal sentenciador dictó sentencia a favor de la demandante por $7,790.86. El caso está ante nos en apelación contra dicha sentencia.

Las conclusiones de hechos del tribunal sentenciador fueron en síntesis las siguientes: La demandante distribuye en Puerto Rico productos eléctricos de la marca "Hotpoint" por mediación de agentes o traficantes. Bajo el sistema de agentes los productos se muestran meramente con fines de exhibición en el local de un agente, quien hace ventas al por menor a nombre de la demandante. Cuando las ventas se efectúan a crédito, los contratos de venta condicional y los pagarés se formalizan a nombre y para beneficio de la demandante. Antes de efectuar dichas ventas a plazos, la demandante practica una investigación respecto al crédito del comprador en perspectiva. La demandante—no el agente—determina si debe extender crédito a cada cliente individual. En caso afirmativo, la demandante obtiene la inscripción del contrato de venta condicional en el registro correspondiente. Sirve la mercancía al comprador de las existencias que mantiene en su almacén. El agente recibe una comisión por cada venta. La demandante lleva a cabo el cobro de los plazos del precio de venta y reposee la mercancía en caso de que el comprador

deje de pagarlos. El agente no es responsable del pago de los plazos por el comprador al por menor.

Bajo el sistema de traficantes la demandante vende la mercancía al por mayor a los traficantes, quienes a su vez la revenden al por menor directamente al público. Contrario al sistema de exhibición utilizado por los agentes, los traficantes venden los productos que tienen en sus establecimientos. Si venden a crédito, usan contratos de venta condicional y pagarés, que se formalizan exclusivamente a nombre y para beneficio de ellos y los inscriben en el registro correspondiente. El precio que se da al traficante se le carga a éste en cuenta abierta en los libros de la demandante, perfeccionándose el contrato de venta entre ésta y el traficante una vez éste realiza la venta al por menor. Las ventas a compradores son hechas exclusivamente por el traficante sin mediar ninguna investigación de crédito por la demandante o intervención de clase alguna de parte de ésta.

La demandada vendió al por menor productos "Hotpoint" y enseres de otras firmas por conducto de varios establecimientos que opera en la zona metropolitana. Comenzando en abril de 1949, la demandante vendió a la demandada productos "Hotpoint" bajo el sistema de traficantes. De sus propias existencias, la demandada los vendió al por menor a compradores, sin mediar investigación de crédito alguna por parte de la demandante. Ésta cargaba a la demandada los productos vendidos por la segunda y la demandante recibía periódicamente cheques de la demandada en pago de los mismos; los contratos de venta condicional y los pagarés, extendidos a la demandada, eran simultáneamente descontados por ésta con la demandante, la que pagaba a la demandada en cheques por los mismos, menos los gastos de financiamiento. Posteriormente, en lugar de expedir cheques a la demandante, la demandada empezó a descontar con la demandante y contra una cuenta abierta el importe de los contratos de venta condicional y pagarés que recibía de los compradores. Los contratos de venta condicional eran endosados por la demandada

a la demandante haciendo constar en los mismos que la demandada "cede y traspasa" todos sus derechos en los mismos a la demandante. Los pagarés eran endosados "Universal Furniture Co., Inc. Por: D. Diago."

· Cuando el otorgante de un contrato o pagaré dejaba de pagar el plazo mensual, la demandante enviaba una lista a la demandada, así como a los demás traficantes, demostrativa de las cantidades en descubierto, y exigía de la demandada y de los demás traficantes el pago de los plazos vencidos. Con fechas 20 de octubre de 1949 y 19 de enero de 1950, el gerente de la demandante dirigió dos cartas a la demandada llamándole la atención hacia el hecho de que ésta estaba considerablemente atrasada en los pagos de acuerdo con el convenio celebrado entre ellas, que disponía que la demandada respondería del importe de los plazos atrasados de los compradores al por menor. La demandada hizo dichos pagos durante un año sin objeción. Nunca cuestionó el contenido de las dos cartas; fué por primera vez en el mes de septiembre de 1950 que negó su responsabilidad en cuanto a dichos pagos.

La demandada vendía al detalle muebles y otros artículos para el hogar, bajo el plan de ventas a plazos, los cuales compraba al por mayor a otras casas comerciales. Vendía estos productos a base de contratos de venta condicional únicamente, sin pagarés. Utilizaba pagarés en las transacciones con la demandante y los endosaba en blanco porque ésa era la única forma bajo la cual la demandante negociaría con ella.

En sus conclusiones de derecho el tribunal sentenciador calificó las transacciones entre las partes como contratos de descuento de documentos comerciales, los cuales no están reglamentados por el Código de Comercio.. Resolvió, por lo tanto, que bajo el art. 81 de dicho Código, las transacciones se regían por el art. 1124 del Código Civil y que la deuda original de la demandada con la demandante quedaba en todo su vigor mientras los pagarés no fueran satisfechos, citando entre otras autoridades *Dávila* v. *Torres*, 58 D.P.R. 881;

*González* v. *Virella*, 24 D.P.R. 401; *Santini Fertilizer Co.* v. *Jiménez*, 42 D.P.R. 33; Brannan, *Negotiable Instruments Law*, sexta ed., pág. 895. El tribunal sentenciador también concluyó que: (1) la práctica seguida por la demandada de satisfacer mensualmente el importe de los pagarés vencidos y no satisfechos, de acuerdo con la lista mensual enviádale por la demandante, constituía un uso mercantil que era la ley entre las partes, citando el art. 2 del Código de Comercio; Tullio Ascarelli, Derecho Mercantil, págs. 31–33; César Vivante, 1 Tratado de Derecho Mercantil, pág. 41; 1 Gay de Montellá, Código de Comercio, pág. 22; (2) los pagarés son instrumentos negociables, citando el art. 67 de la Ley de Instrumentos Negociables y *París* v. *Canety*, 73 D.P.R. 403; y (3) aun cuando los pagarés no fueren negociables, existe responsabilidad de la demandada hacia la demandante a base de los endosos en blanco puestos por ella en los mismos, citando 8 Am. Jur. sec. 556, pág. 261, y 79 A.L.R. 720–1.

■■ El primer señalamiento es que el tribunal sentenciador erró al permitir a la demandante al comienzo de la vista del caso que enmendara la demanda. Esta contención es frívola. La demandada admitió durante la vista del caso que no daba "énfasis" a este error. La cuestión levantada por la demandada fué que el tribunal sentenciador no debió haber permitido a la demandante presentar prueba de un convenio entre ésta y la demandada, bajo el cual la última estaba obligada a satisfacer los pagos atrasados cuando los compradores dejaban de hacerlo, y una práctica mercantil a este efecto, porque estas dos cuestiones no fueron específicamente alegadas en la demanda. La demanda, que nunca fué de hecho formalmente enmendada, alegaba solamente que la demandada adeudaba a la demandante una suma específica de dinero porque la demandada había endosado y cedido a la demandante una serie de contratos de venta condicional y unos pagarés que no fueron luego satisfechos por los compradores. En primer lugar, estas dos cuestiones fueron específicamente levantadas en las declaraciones

juradas radicadas por la demandante en oposición a la moción de la demandada sobre sentencia sumaria. Las alegaciones podían, por lo tanto, haber sido consideradas enmendadas para conformarlas a ellas, por lo menos a los fines de la moción sobre sentencia sumaria. *Hettinger & Co.* v. *Tribunal de Distrito*, 69 D.P.R. 137; 143; *Hernández* v. *Caraballo*, 72 D.P.R. 673, 681; 6 Moore's *Federal Practice* 2056 (segunda ed.). En segundo lugar, y más importante aún, en ausencia de sorpresa, lo cual no se alega aquí, las alegaciones pueden considerarse enmendadas para conformarlas a la prueba. Regla 15(*b*), Reglas de Enjuiciamiento Civil; *Yordán* v. *Ríos*, 68 D.P.R. 259; *Ruiz* v. *Ruiz*, 74 D.P.R. 347, 353; *Echevarría* v. *Despiau*, 72 D.P.R. 472.([1]) El primer error no fué cometido.

Los demás señalamientos son que el tribunal sentenciador erró: (*a*) al permitir prueba sobre prácticas comerciales cuando la demandante predicaba su caso en un convenio entre las partes; (*b*) al ignorar la evidencia de la propia demandante al efecto de que, como cuestión de hecho, tal convenio existió; (*c*) al no resolver que los términos del convenio no fueron probados por la demandante; (*d*) al dar peso y efecto a las cartas de la demandante a la demandada sobre prácticas comerciales, siendo aquéllas evidencia unilateral (*self-serving*) que solamente podía ser eficaz en ausencia de un convenio entre las partes; (*e*) al aceptar prueba secundaria unilateral del convenio, presentada por la demandante, cuando ésta tenía prueba directa sobre el mismo, que no presentó; (*f*) al determinar, sin tal prueba directa, los términos del contrato entre las partes; (*g*) al aplicar el art. 1124 del Código Civil a este caso; (*h*) al resolver que la demandada adeudaba a la demandante la suma de $7,790.86; (*i*) al aplicar a este caso la teoría de uso mercantil; (*j*) al resolver que los pagarés aquí envueltos eran

---

([1]) Como dijimos en *Shell Co. (P.R.) Ltd.* v. *Tribl. de Distrito*, 73 D.P.R. 451, 460, ". . . la función de las alegaciones es simplemente bosquejar la controversia y para que cada parte notifique a la otra de la naturaleza general de sus contenciones en contrario."

negociables; (*k*) al resolver, que aún sin ser negociables, la demandada era responsable del pago de los mismos por haberlos endosado en blanco; (*l*) al dictar sentencia a favor de la demandante por la suma de $7,790.86 y $600 para honorarios de abogado.

La mayoría de estos errores no necesita consideración por separado. Los autos contienen suficiente evidencia oral y documental que sostiene las conclusiones de hechos del tribunal sentenciador al efecto de que bajo el convenio entre las partes la demandada vendió productos como traficante más bien que como agente. No intervendremos por lo tanto con tales conclusiones. (²) Y no encontramos error perjudicial alguno en la actuación del tribunal sentenciador al permitir a la demandante probar que su uso mercantil vis-a-vis la demandada y otros traficantes coincidía con los términos de su convenio con la demandada. Véase *Portilla* v. *Banco Popular*, 75 D.P.R. 100, 121 *et seq.*

■■ No nos detenemos a determinar si los pagarés se tornaron en no negociables por mencionarse en los mismos los contratos de venta condicional. *Cf.* Britton, *Bills and Notes*, págs. 62–4, y casos citados; *Annotation*, 61 A.L.R. 815. Bajo las circunstancias de este caso, el endoso de los pagarés en blanco hace a la demandada responsable de su pago a la demandante, al no pagarlos los otorgantes, (*a*) si los pagarés eran negociables, *París* v. *Canety*, supra, 407, y autoridades allí citadas; o (*b*) si los pagarés no eran negociables, art. 1124, Código Civil, ed. 1930; (³) *Dávila* v. *Torres,*

---

(²) Con posterioridad a la controversia aquí envuelta, la demandante hizo sus arreglos aun más claros con sus traficantes al exigirles convenios por escrito que específicamente disponían que ellos eran responsables a la demandante en caso de que los compradores no pagaran sus plazos. Pero los autos en este caso contienen suficiente evidencia para demostrar tal responsabilidad aun sin un convenio por escrito tan específico. -

(³) El art. 1124 dispone en parte que "La entrega de pagarés a la orden, o letras de cambio u otros documentos mercantiles, sólo producirá los efectos del pago cuando hubiesen sido realizados, o cuando por culpa del acreedor se hubiesen perjudicado."

supra; *Santini Fertilizer Co.* v. *Jiménez*, supra; *González* v. *Virella*, supra; *Annotation*, 79 A.L.R. 720; Ann. Cas. 1912 B 707; casos citados en 8 Am. Jur. pág. 261, escolio 14; 26 Ill. L. Rev. 911; *Note*, 98 U. Pa. L. Rev. 213. *Cf.* secs. 265–6, Código de Comercio, ed. de 1932; 1418–9, Código Civil. ([4])

La demandada se queja de que la demandante reclamó $9,453.94 en su demanda y durante el juicio rebajó la reclamación a $7,790.86. La explicación dada por la demandante fué que algunos compradores le hicieron pagos sobre sus pagarés mientras el pleito estaba pendiente de juicio. Fué, por lo tanto, absolutamente correcto que rebajara su reclamación a dicha suma durante la vista. Si posteriormente al juicio, se ha hecho algún pago similar, la demandada, desde luego, tiene derecho al mismo. ([5])

*La sentencia del Tribunal Superior será confirmada.*

El Juez Asociado Sr. Pérez Pimentel no intervino.

---

([4]) Para la discusión de una cuestión diferente, con respecto al problema de si una compañía de finanzas, bajo ciertas circunstancias, es un tenedor de buena fe de un pagaré otorgado concurrentemente con un contrato de venta condicional, *Cf. Mutual Finance Co.* v. *Martin,* 63 So.2d 649 (Fla., 1953), comentado en 39 Va. L. Rev. 830; *Commercial Credit Corp.* v. *Orange County Mach. Wks.*, 214 P.2d 819 (Calif. 1950); *White System of New Orleans, Inc.* v. *Hall,* 53 So.2d 227 (La., 1951), comentado en XXVII Tulane L. Rev. 255; Kripke, *Chattel Paper As a Negotiable Specialty Under the Uniform Commercial Code,* 59 Yale L. J. 1209, 1220–22; 98 U. Pa. L. Rev. 244. No hacemos comentario alguno sobre este problema.

([5]) La demandante también señala que algunos compradores voluntariamente han entregado los productos por los cuales no pagaron en su totalidad a la demandante, la cual ha notificado a la demandada que tales productos están a su disposición.