Buena Vista Dairy, Inc., demandante y recurrente, *v.* Fran-
cisco Aponte Labrador, demandado y recurrido.

*Número:* R-77-231          *Resuelto:* 30 de abril de 1979

*Leopoldo Tormes García,* abogado de la recurrente; *Mora & Cangiano,* abogados del recurrido.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Buena Vista Dairy, Inc., corporación dedicada a la elaboración, pasteurización y venta de leche, celebró el 21 de julio de 1967 un contrato con el señor Francisco Aponte Labrador. En virtud de este documento el señor Aponte se comprometió a comprarle diariamente a Buena Vista leche pasteurizada para servir a su clientela y a pagarla "una vez haya terminado la venta y distribución del día, debiendo hacer dicho pago en dinero en efectivo." La vigencia del contrato fue de cinco años, extendibles a cinco años más bajo determinadas condiciones.

En cumplimiento de otro acuerdo Buena Vista compró por $6,500 una guagua para reventa al señor Aponte, quien convino en satisfacer el precio mediante el abono de medio centavo por litro de leche comprado por él. No se dispuso término fijo para la liquidación de esta deuda.

El señor Aponte no pagó en repetidas ocasiones el valor completo de la leche que compraba. El débito fue en aumento. Se pactó oralmente, para satisfacer la acreencia, que al deudor se le cargaría a diario un cuarto de centavo adicional por cada litro de leche que comprase.

Los asientos de contabilidad reflejaban de continuo los cargos convenidos a su haber, mas persistió la tardanza en los pagos. Para el 10 de junio de 1974 el señor Aponte le

adeudaba a la compañía $2,532.82 por concepto de leche de vaca y $3,152.99 por razón de la guagua adquirida. En esta fecha fue requerido a liquidarle a Buena Vista en el plazo de veinticuatro horas su deuda de $5,713.45.

El señor Aponte no pudo saldar la deuda. El 26 de julio de 1974 la compañía lo demandó por la leche vendida y no pagada, embargándole el camión en aseguramiento de sentencia. El 22 de agosto siguiente se instó otro pleito de cobro de dinero por el balance pendiente en concepto de la compra del camión.

Consolidadas las acciones en cobro de dinero, el tribunal de instancia las desestimó por entender que la relación entre las partes reflejaba una situación de cuenta corriente y que en consecuencia el demandado no había violado sus acuerdos por no ser exigibles sus deudas cuando se le requirió satisfacerlas. La empresa recurrió en alzada ante nos. Dictamos orden de mostrar causa por la cual no debe revocarse la sentencia recurrida.

■　Antes de precisar la figura jurídica representada por los contratos descritos debemos determinar el código que los rige. El Art. 243 del Código de Comercio, 10 L.P.R.A. sec. 1701, dispone:

"Será mercantil la compraventa de cosas muebles para revenderlas, bien en la misma forma que se compraron, o bien en otra diferente, con ánimo de lucrarse en la reventa."

El Art. 244 que le sigue, 10 L.P.R.A. sec. 1702, establece una excepción al principio citado, que debe examinarse. Se expresa en él:

"No se reputarán mercantiles:

.　　.　　.　　.　　.　　.　　.　　.

(2) Las ventas que hicieren los ... ganaderos, de los frutos o productos de sus ... ganados ...."

Esta excepción proviene del Art. 360 del Código Español de Comercio de 1829. González de Echávarri y Vivanco,

*Comentarios al Código de Comercio y Jurisprudencia Española*, 3ª ed., Tomo III, 1945, Valladolid, págs. 437–38. Su alcance es limitado. Véanse: *Loíza Sugar Company* v. *Baquero & Cía.*, 29 D.P.R. 863, 865–66 (1921); *Freiría & Co., S. en C.* v. *Cortés Hnos. & Co.*, 32 D.P.R. 127, 136 (1923); Uría, *Derecho Mercantil*, 11ª ed., Madrid, 1976, págs. 474–475; E. Langle Rubio, *Manual de Derecho Mercantil Español*, Tomo III, Barcelona, 1959, pág. 144.

■ El referido Art. 244(2) es inaplicable al caso presente. Buena Vista Dairy no se dedica ni total ni parcialmente a la ganadería, sino a la venta de un producto elaborado.

■ Cabe la pregunta, no obstante, de si la venta al señor Aponte del camión posee carácter de mercantil ya que, a diferencia de la leche, el comprador no lo adquirió con ánimo de revenderlo. La contestación es que el recurrido, aunque no compró el camión con tal fin, lo obtuvo para su uso en el comercio. Fue un acto de comercio, entre comerciantes, una gestión accesoria o complementaria de la compra de la leche. Art. 2 del Código de Comercio, 10 L.P.R.A. sec. 1002. Véase: Langle Rubio, *op. cit.*, Tomo III, págs. 136–137. El Código de Comercio gobierna ambos contratos.

■ En lo que respecta a la clasificación de los mismos, el ilustrado tribunal de instancia rehusó con entera corrección emplear la figura del contrato de cuenta corriente. Esta figura está caracterizada "por la existencia de un pacto que, a base de la recíproca concesión de crédito, aspira a mantener unidos los elementos integrantes de la cuenta, sin posibilidad de que sus partidas puedan ser hechas efectivas hasta el cierre y liquidación previstos y determinantes del saldo final reclamable . . . ." Sentencia de 23 de mayo de 1946 (Esp.); Sentencia de 15 de enero de 1949 (Esp.); Langle Rubio, *op. cit.*, Tomo III, pág. 378; Uría, *op. cit.*, pág. 630; Garrigues, *Curso de Derecho Mercantil*, Tomo II, 6ª ed., Madrid,

1974, págs. 43–46. Los acuerdos celebrados por la recurrente y el recurrido no son clasificables como contratos de cuenta corriente. No hubo pacto para suprimir las liquidaciones y pagos parciales hasta determinado tiempo ni recíproca concesión de crédito ([1]) entre las partes. ([2])

■ La situación de cuenta corriente es muy distinta al contrato del mismo nombre. Es en esencia un simple uso contable que en nada afecta la relación jurídica entre personas que contraten entre sí. Garrigues, *op. cit.*, Tomo II, pág. 42, afirma sobre el particular:

"El empresario que está en relación continuada de negocios con otro suele utilizar la cuenta corriente abierta por Debe y Haber como instrumento de representación contable de las prestaciones recíprocas que componen aquella relación . . . .

La contabilización de una relación patrimonial duradera, aunque ésta se prolongue en el tiempo y sean múltiples las prestaciones recíprocas, en nada afecta a los contratos que nacen, se ejecutan y extinguen entre las partes."

Uría, *op. cit.*, pág. 629, reitera así el principio:

". . . esas situaciones contables de cuenta corriente no generan por sí vínculo jurídico alguno entre las partes, ni afectan para nada a la vida ulterior de los respectivos créditos anotados en cuenta. No son, en una palabra, expresión de un contrato . . . ."

■ El error cometido en este caso consiste en haberle impartido a una situación de cuenta corriente los efectos de un contrato de cuenta corriente.

Los convenios acordados entre el recurrido y la recurrente son contratos de compraventa mercantil. Satisfacen a cabalidad los requisitos del Art. 243 del Código de Comercio, 10 L.P.R.A. sec. 1701, *supra*. Langle Rubio, *op. cit.*, Tomo III, pág. 138 *et seq.*; Uría, *op. cit.*, pág. 473 *et seq.*; Garrigues,

---

([1]) La teoría de la concesión recíproca de crédito, vigente en España, ha sido criticada en Alemania e Italia. Garrigues, *op. cit.*, Tomo II, pág. 45.

([2]) No hacemos pronunciamiento alguno en esta opinión sobre las modalidades bancarias de este contrato.

*op. cit.,* Tomo II, pág. 68 *et seq.* Examinemos los contratos celebrados con vista a los preceptos que reglan la compraventa de tal orden.

■ En lo que respecta al contrato de compraventa de leche debe recordarse que éste dispuso la liquidación diaria de las compras. Al ocurrir los atrasos la empresa toleró la mora por un tiempo, mas no surge de autos que se pactase la posposición para determinada fecha de las liquidaciones. La indulgencia de la recurrente no la obligó *ad aeternam* a sorportar la morosidad del recurrido. El Art. 92 del Código de Comercio, 10 L.P.R.A. sec. 1312, declara:

> "No se reconocerán términos de gracia, cortesía u otros que bajo cualquier denominación, difieran el cumplimiento de las obligaciones mercantiles, sino los que las partes hubieren prefijado en el contrato ⌒ se apoyaren en una disposición terminante de derecho."

En *Waterman Export Corp.* v. *Valdejulli,* 88 D.P.R. 499, 505 (1963), citando a Langle Rubio, recalcamos la razón de orden público que apoya esta disposición:

> "La enérgica tutela jurídica del tráfico mercantil exige que las obligaciones comerciales ofrezcan la mayor seguridad en cuanto al tiempo en que deberán cumplirse . . . ."

La recurrente tenía derecho a cobrar su acreencia cuando lo hizo. No estaba forzada a aguardar por más tiempo.

El contrato de compraventa del camión no estipulaba término fijo para el pago de la deuda, a distinción del acuerdo referente a la leche. Se acordaron pagos parciales, pero no se fijó plazo para la liquidación final. La naturaleza subsidiaria de este contrato hace suponer que, a lo sumo, su subsistencia dependía de la del acuerdo sobre compra de leche. El Art. 93 del Código de Comercio, 10 L.P.R.A. sec. 1313, provee sobre este particular:

> "Las obligaciones que no tuvieren término prefijado por las partes o por las disposiciones de este Código, serán exigibles a

los diez días después de contraídas, si sólo produjeren acción ordinaria, y al día inmediato si llevaren aparejada ejecución." [3]

En el caso de estas obligaciones conviene distinguir entre los conceptos de exigibilidad y morosidad. Una obligación mercantil sin término prefijado, como la del caso de autos, es exigible en cualquier instante, después de transcurrir diez días de su nacimiento, se haya o no incurrido en mora. Toledo Alamo, *Exigibilidad de las Obligaciones Mercantiles*, 19 Rev. Jur. U.P.R. 1, 17 (1949).

*Se expide el auto solicitado y se revoca la sentencia recurrida.*

El Juez Asociado Señor Carlos V. Dávila concurre con el resultado. El Juez Asociado Señor Carlos J. Irizarry Yunqué se inhibió.

---

[3] Don Domingo Toledo Alamo, en su artículo *Exigibilidad de las Obligaciones Mercantiles*, 19 Rev. Jur. U.P.R. 1, 3-7 (1949), señaló acertadamente que debe considerarse derogada la parte final de este artículo, referente a la Ley de Enjuiciamiento Civil de España, ya que el código que la suplantó en 1904 no reconocía la existencia de un juicio ejecutivo para el cumplimiento de las obligaciones. El único requisito vigente en la actualidad es el de los diez días.