RAMALLO BROTHERS PRINTING, INC., demandante y recurrido, *v.* GUILLERMO RAMIS, ETC., demandados y peticionarios.

*Número:* CE-92-108          *Resuelto:* 25 de mayo de 1993

---

*José R. Ortiz Vélez*, abogado de la codemandada y peticionaria The Atlantic Organization, Inc.; *Harry Anduze Montaño* y *Guillermo Ramos Luiña*, abogados de los demandados y peticionarios esposos Ramis Arrarás y su sociedad de bienes gananciales; *Yvonne M. Imbert Garratón*, del *Bufete Alex González*, abogada del demandante y recurrido Ángel Ramallo; *Antonio A. Arias Larcada*, de *McConnell Valdés, Kelley, Sifre, Griggs & Ruiz Suria*, abogado de la demandante y recurrida Ramallo Brothers Printing, Inc.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

The Atlantic Organization, Inc. (en adelante Atlantic) es una corporación doméstica dedicada a prestar servicios de promoción, mercadeo e investigación en el área de la publicidad. Como único accionista tenía a su Presidente y

Director, Guillermo J. Ramis; su esposa, María Celeste Arrarás, fungía como Secretaria, Tesorera y Directora.

En 1985, Atlantic solicitó a Ramallo Brothers Printing, Inc. (en adelante Ramallo) la impresión de unas cubiertas para pasajes y unas tarjetas de presentación "para anunciar a la compañía Arrow Air quien, en aquel momento era cliente de Atlantic". Apéndice, pág. 2. Ramallo cumplió y facturó a Atlantic. Atlantic pagó parte de la factura y, posteriormente, expidió otro cheque de nueve mil novecientos treinta y dos dólares con ochenta centavos ($9,932.80) el cual fue devuelto por insuficiencia de fondos. Ante las reclamaciones de Ramallo, Atlantic indicaba que el cheque fuera redepositado alegando errores del Banco. A pesar de que Ramallo lo depositó varias veces, nunca pudo cobrarlo. Posteriormente, Ramis cerró la cuenta bancaria de Atlantic.

Luego de ciertos eventos, entre los cuales se destaca el hecho que Ramis se asoció con otra compañía de publicidad y se llevó consigo los clientes de Atlantic, previa interpelación de pago, el 23 de octubre de 1986 un representante de Ramallo denunció a Ramis por el delito de expedición de cheques sin fondos. Se determinó causa probable; después el caso fue archivado al demorarse la celebración del juicio en virtud de la Regla 64(n)(4) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Así las cosas, los esposos Ramis-Arrarás reclamaron *extrajudicialmente* por daños sufridos a Ramallo debido alegadas imputaciones falsas. Ramallo los demandó y, como causas de acción, adujo el cobro de los diez mil doscientos dos dólares con ochenta centavos ($10,202.80) adeudados por Atlantic; solidaridad de los esposos Ramis-Arrarás por actividades fraudulentas al firmar un cheque sin fondos; la anulación de la transferencia de los clientes de Atlantic a la nueva corporación por ser los únicos recursos de Atlantic y en fraude de sus acreedores, y un decreto judicial de que

los demandados Ramis-Arrarás carecían de causa de acción por persecución maliciosa.

Atlantic y los codemandados Ramis-Arrarás *et al.* contestaron la demanda e instaron una reconvención. Como defensa afirmativa levantaron la prescripción y solicitaron la desestimación. Previa vista, el tribunal (Hon. Francisco A. Padilla Rodríguez, Juez) rehusó desestimar.

A solicitud de los esposos Ramis-Arrarás, expedimos el *certiorari*.([1])

## II

El argumento central de los peticionarios Ramis-Arrarás gira en torno a que la reclamación de los diez mil doscientos dos dólares con ochenta centavos ($10,202.80) está prescrita. Se basan en que, a pesar de que no existe controversia de que la compra objeto del litigio era mercantil, el ilustrado tribunal de instancia no quiso aplicar el término prescriptivo de tres (3) años. Art. 1867 del Código Civil, 31 L.P.R.A. sec. 5297(4).

■ No tienen razón. El foro de instancia —tomando como ciertas las alegaciones de la demanda— concluyó que la compraventa era mercantil y que, por ende, no regía el aludido término prescriptivo trienal. En efecto, surge de las alegaciones que los materiales impresos comprados a Ramallo estaban destinados a promover la Compañía Arrow Air quien era cliente de Atlantic, por lo que la intención de esta última era lucrarse de la reventa de éstos a la aerolínea. *No hay nada en las alegaciones de la demanda*

---

([1]) El único señalamiento expone:

"Erró el Tribunal Superior, Sala de San Juan, al denegar las solicitudes de desestimación interpuestas por los demandados peticionarios contra la Demanda y la Demanda Enmendada, ya que la desestimación de la Demanda Enmendada en su totalidad procede de pleno derecho, por prescripción o caducidad, y por constituir una utilización impropia de la Regla 59.1." Petición de *certiorari*, pág. 6.

*que indique que los bienes eran para el consumo de Atlantic.* Estaba presente el elemento que distingue principalmente la compraventa mercantil de la civil, "el doble propósito [del comprador] de revender ulteriormente las cosas compradas y de obtener un lucro". *Reece Corp. v. Ariela, Inc.*, 122 D.P.R. 270, 276–277 (1988); Art. 243 del Código de Comercio, 10 L.P.R.A. sec. 1701. Véanse, además: *Buena Vista Dairy, Inc. v. Aponte*, 108 D.P.R. 657, 659–661 (1979); *Waterman Export Co. v. Valdejulli*, 88 D.P.R. 499, 503–504 (1963).

■ Los estudiosos de la materia están contestes que en materia de prescripción, el Código de Comercio no tiene una reglamentación sistemática y completa; sólo visualiza algunos casos de prescripción, y los que carecen de término en particular los remite a la reglas del derecho civil. J. Garrigues, *Curso de Derecho Mercantil*, 8va ed., Madrid, 1983, pág. 38; R. Uría, *Derecho Mercantil*, 12ma ed., Madrid, Imprenta Aguirre, 1975, pág. 480. Así, su Art. 940 (10 L.P.R.A. sec. 1902), lee:

> Las acciones que en virtud de este Código no tengan un plazo determinado para deducirse en juicio, se regirán por las disposiciones del derecho común.

Tal es la situación en los casos de la compraventa. Como el Código de Comercio no fija un tiempo prescriptivo, la acción del vendedor en cobro del precio será quince (15) años por interacción del Art. 940 del Código de Comercio, *supra*, y el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294.([2]) L. Díez-Picazo, *La prescripción en el Derecho Civil*, Barcelona, Ed. Bosch, pág. 214.

■ El plazo prescriptivo trienal del Art. 1867 del Código Civil, *supra*, invocado por los peticionarios no go-

---

([2]) Dispone:

"La acción hipotecaria prescribe a los veinte (20) años, y las personales que no tengan señalado término especial de prescripción, a los quince (15)." 31 L.P.R.A. sec. 5294.

bierna a las compraventas estrictamente mercantiles.(³) Dicho precepto precisamente señala que los bienes vendidos son para consumo del comprador.

> Si la compraventa se realiza entre dos comerciantes dedicados al mismo tráfico y sobre mercaderías destinadas a él, se trata claramente de una compraventa mercantil y queda fuera del radio del artículo. Ello nos lleva a pensar que la idea que ha presidido el artículo es la de una compra de cosas destinadas al consumo del comprador, entendiendo la expresión consumo con toda la amplitud que le da el Artículo 326 del Código de Comercio. L. Díez-Picazo *op. cit.*, pág. 215.

■ Se trata de una situación que se desvía de la observación doctrinaria de que, como regla general, los términos prescriptivos en lo mercantil son más cortos que en lo civil en atención a las exigencias peculiares del tráfico comercial. Véanse: J. Garrigues, *op. cit.*; R. Uría, *op. cit.*; F. Sánchez Calero, *Instituciones de Derecho Mercantil*, 7ma ed., Valladolid, Ed. Clares, 1978, pág. 376; J.M. Martínez Val, *Derecho Mercantil*, Barcelona, Ed. Bosch, 1979, pág. 448.

### III

Distinta conclusión se impone en cuanto a la segunda y a la tercera causa de acción; ambas están prescritas. Nos explicamos.

Tomadas como ciertas las alegaciones, estamos ante unas reclamaciones por los daños causados debido a las

---

(³) El Art. 1867 del Código Civil, 31 L.P.R.A. sec. 5297, en lo pertinente lee:

"Por el transcurso de tres (3) años prescriben las acciones para el cumplimiento de las obligaciones siguientes:

"(4) La de abonar a los posaderos la comida y habitación, y a los mercaderes el precio de los géneros vendidos a otros que no lo sean, o que siéndolos se dediquen a distinto tráfico."

Nuestra jurisprudencia sobre la precitada disposición es escasa. En *Dávila v. Torres*, 58 D.P.R. 881 (1941), aclaramos que el término "mercader" equivalía a "comerciante", y se refería a la persona que con capacidad legal se dedica al ejercicio de comercio, al por mayor o al menor, sobre géneros vendibles.

actuaciones alegadamente fraudulentas de Ramis. En esta etapa, es irrelevante si Ramis tendría que responder en su carácter personal o como Presidente de Atlantic y, por ende, la corporación sería la única responsable.

Sí notamos que la segunda causa de acción específicamente imputa a Ramis haber firmado un cheque sin fondos y haber cerrado la cuenta bancaria de Atlantic en "detrimento" de Ramallo. La tercera causa de acción es haber actuado en fraude de acreedores y haberse llevado a los clientes de Atlantic hacia una nueva corporación. Claramente *no* estamos ante unas reclamaciones basadas en un incumplimiento de contrato; tampoco en cobro de dinero, pues como hemos visto, de esto se ocupa la primera causa de acción.[4] Sin duda, se trata de unas reclamaciones por daños *extracontractuales*.

■   Sabido es que en este tipo de acciones, el término es un (1) año. Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298. Dicho término sería igual aunque la acción fuera contra Ramis en su carácter personal bajo la hipótesis de rasgarse el velo corporativo. Como los hechos ocurrieron en 1986, y no fue hasta abril de 1991 que Ramallo entabló la acción de epígrafe, la segunda y tercera causa de acción están prescritas y deben desestimarse.

---

[4] En ese sentido, es inaplicable el Art. 1202 de la Ley de Corporaciones, 14 L.P.R.A. sec. 2202:

"(a) Cuando los oficiales, directores o accionistas de cualquier corporación estén obligados a pagar las deudas, o cualquier parte de las deudas de la corporación, toda acción para exigir el cumplimiento de tal obligación será tramitada por acción de clase en beneficio de todos los acreedores, acción en la cual será parte la corporación . si existiere.

"(b) No se entablará pleito alguno contra ningún oficial, director o accionista por deuda u obligación de su corporación hasta que recaiga sentencia contra ésta respecto de tal pleito; ni podrá entablarse tal pleito después de los tres (3) años siguientes a la fecha de la sentencia. Cualquiera de tales oficiales, directores o accionistas podrá levantar cualquier defensa que la corporación hubiere podido levantar contra tal deuda u obligación. Este inciso (b) no será aplicable a los pleitos que se entablen contra oficiales o directores de la corporación que esté en proceso de disolución o liquidación por mala administración en el ejercicio de sus funciones con arreglo a las secs. 2001 a 2012 de este título."

# IV

En su señalamiento final, los peticionarios Ramis-Arrarás argumentan la improcedencia de una sentencia declaratoria que solicita la adjudicación de que ellos carecían de causa de acción futura contra Ramallo. Invocan jurisprudencia de otras jurisdicciones que así lo resuelve,[5] y a modo de argumentación, formulan la siguiente interrogante: "¿Qué pasaría con el sistema judicial si los potenciales demandados bajo el Art. 1802 del Código Civil de Puerto Rico optasen por 'reacci[o]nar' a reclamaciones extrajudiciales mediante la radicación de demandas de sentencia declaratoria?" Petición de *certiorari*, pág. 13.

■ En efecto, la doctrina general es contraria a la utilización del procedimiento declaratorio en casos de negligencia. 4 *Wright & Miller, Federal Practice and Procedure: Civil 2d* Sec. 2765, págs. 729–730. Nuestra Regla 59 (34 L.P.R.A. Ap. II), sobre sentencias declaratorias, procede del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2992. En su origen fue tomada literalmente de la Ley Uniforme de Sentencias Declaratorias. Véanse: *Charana v. Pueblo*, 109 D.P.R. 641 (1980); *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978). No existen razones por las que no debamos adoptar esa misma interpretación.[6]

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. La Juez Asociada Señora

_____

[5] *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165, 1168 (7mo Cir. 1969); *States Steamship Company v. Featherstone*, 240 F. Supp. 830, 832–833, (D. Or. 1965); *UNC Resources, Inc. v. Benally*, 518 F. Supp. 1046, 1049 (D. Ariz. 1981); *Sun Oil Co. v. Transcontinental Gas Pipe Line Corp.*, 108 F. Supp. 280, 282 (E.D. Pa. 1952), confirmado en *Sun Oil Co. v. Transcontinental Gas Line Corp.*, 203 F.2d 957 (3er Cir. 1953); *Frito-Lay, Inc. v. Dent*, 373 F. Supp. 771, 773–774, (D. N.J. 1974); *Southern Ins. Co. v. Bennett*, 680 F. Supp. 387, 389 (D.C. Ga. 1988); *Bankers & Shippers Ins. Co. v. Kildow*, 654 S.W.2d 600, 602 (1983).

[6] En este extremo el error del tribunal de instancia es inconsecuente. Dicho foro tiene ante sí la reconvención formulada por los esposos Ramis-Arrarás en la que reclaman daños por alegada persecución maliciosa.

Naveira de Rodón y el Juez Asociado Señor Hernández Denton no intervinieron. El Juez Asociado Señor Alonso Alonso se inhibió.