PaineWebber Incorporated of Puerto Rico, demandante y recurrente, *v.* First Boston (Puerto Rico) Inc., demandado y recurrido.

Número: RE-91-297          Resuelto: 30 de junio de 1994

*Peter J. Trías,* de *Trías, Acevedo y Otero,* abogados del recurrente; *Pedro J. Santa Sánchez y Luis Edwin González Ortiz,* de *O'Neill & Borges,* abogados del recurrido.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

Nos toca determinar cuál es el término prescriptivo para reclamaciones por incumplimiento de contrato de compraventa bajo la Ley Uniforme de Valores, 10 L.P.R.A. sec. 851 *et seq.* Resolvemos que el *único* término aplicable es aquel dispuesto específicamente por esta ley.

I

PaineWebber Incorporated of Puerto Rico (en adelante PaineWebber) acordó con First Boston (Puerto Rico), Inc. (en adelante First Boston), la compraventa de un valor comúnmente conocido como "Ginnie Mae". Dicho Ginnie Mae fue entregado a PaineWebber y pagado por esta entidad *el 26 de mayo de 1987,* y fue posteriormente revendido. En diciembre de 1989 PaineWebber descubrió que el valor adquirido de First Boston no era exento de contribuciones, por lo tanto, se vio obligado a resolver la reventa realizada y a resarcirles a sus clientes por los daños causados.

El 4 de mayo de 1990 PaineWebber demandó a First Boston en el Tribunal Superior, Sala de San Juan, alegando incumplimiento de contrato y solicitando que se decretara la resolución de la venta y se ordenara la devolución del precio y el resarcimiento por los daños sufridos. First Boston, a su vez, pidió la desestimación de la demanda invocando como fundamento el que la causa de acción de PaineWebber había caducado al haber transcurrido en exceso de los dos (2) años desde la fecha en que fue consumado el contrato, según las disposiciones de la Ley Núm. 60 de 18 de junio de 1963, conocida como la Ley Uniforme de Valores. En oposición, PaineWebber alegó que

en virtud del Art. 410(h) de la referida Ley Uniforme de Valores, 10 L.P.R.A. sec. 890(h), esta última no había derogado derechos y remedios existentes a la fecha de entrar en vigor, por lo que se podía elegir entre remedios disponibles. Sostuvo, por lo tanto, que podía basar su reclamación en el Art. 942 del Código de Comercio, 10 L.P.R.A. sec. 1904, que dispone un período prescriptivo de tres (3) años o, en la alternativa, por el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294, que dispone un término prescriptivo de quince (15) años.

El tribunal de instancia (Hon. Ángel F. Rossy, J.) desestimó la demanda en todas sus partes por razón de haberse extinguido la causa de acción. Inconforme, PaineWebber recurre por medio de solicitud de revisión.[1] Acordamos revisar la sentencia recurrida.

## II

La Ley Uniforme de Valores, Ley Núm. 60, *supra*, fue creada con el propósito de establecer en Puerto Rico una reglamentación protectora para el inversionista en el negocio de valores. Hasta ese momento no había legislación particular al respecto. Con dicho objetivo se rindió un Informe Conjunto al Senado de Puerto Rico,[2] el cual ex-

---

[1] PaineWebber presentó las cuestiones de derecho siguientes:

"1.    Si la Ley Uniforme de Valores excluye la aplicación de otros remedios provistos por otras leyes.

"2.    Si el término de prescripción establecido por la Ley Uniforme de Valores le es aplicable a remedios provistos por otras leyes.

"3.    Si los corredores-traficantes pueden considerarse corredores de cambio y bolsa bajo el Código de Comercio de Puerto Rico.

"4.    Si la entrega de un Ginnie Mae tributable en vez de un Ginnie Mae exento es de cosa viciada y si contractualmente se ha alterado el término del examen tratándose de ventas mercantiles sucesivas de cosas cuyo recibo es simbólico." Solicitud de revisión, pág. 2.

A la luz de nuestra decisión, discutiremos únicamente los planteamientos pertinentes a la discusión del término prescriptivo aplicable.

[2] Véase 17 Diario de Sesiones de la Asamblea Legislativa (Senado), T. 4, pág. 1629 (1963).

pone claramente la intención de los creadores de esta medida. De dicho informe citamos, en lo pertinente:

> El objetivo fundamental del proyecto bajo consideración es el de *proteger a los inversionistas y al público en general mediante la exigencia de ciertos requisitos a las personas que se dediquen al negocio de valores* y la creación de un organismo gubernamental con poderes de supervisión y fiscalización sobre diversas fases del negocio, a los fines de evitar que se incurra en prácticas fraudulentas en el curso del mismo.
>
> En Puerto Rico no existe al presente legislación alguna que regule directamente la materia que se propone reglamentar en virtud de esta medida legislativa. El Código de Comercio contiene varios artículos que hacen referencia a "bolsa de comercio" y a los "agentes mediadores del comercio". (Artículos 43–55 y 62–72 del Código de Comercio —10 L.P.R.A., Secciones 1111–1116; 1131–1137, y Secciones 1181–1185 y 1201–1206 respectivamente).
>
> .     .     .     .     .     .     .     .
>
> Las disposiciones del Código de Comercio que hemos mencionado son obsoletas, ya que en Puerto Rico no existen "bolsas de comercio" ni "corredores de cambio". *Por ser tan arcaicas y tan generales no fomentan la compra y venta de valores.* Además, no proveen medios efectivos de carácter administrativo y de índole preventiva para proteger a los inversionistas.
>
> .     .     .     .     .     .     .     .
>
> En Puerto Rico, no hemos tenido hasta el presente ningún problema serio relacionado con prácticas fraudulentas en el mercado de valores. No obstante, debemos prevenir que ello ocurra en el futuro. La adopción de un estatuto del tipo Blue Sky redundará en una mayor protección del público inversionista y de aquellas personas y entidades que se dedican al negocio de valores en nuestra comunidad. *La legislación que se propone ha sido cuidadosamente confeccionada para proveer la mayor protección posible al inversionista sin imponer cargas indebidas sobre el emisor de valores ni sobre el negociante en los mismos* .... (Énfasis suplido.) 17 Diario de Sesiones de la Asamblea Legislativa (Senado), T. 4, págs. 1629–1630 (1963).

Surge claramente de la exposición de motivos de la medida, así como de los principios de hermenéutica aplicables, el hecho de que las transacciones de valores en Puerto Rico están regidas por la Ley Uniforme de Valores. Por ser esta última una ley especial debe prevalecer sobre

otras disposiciones de leyes generales como son el Código de Comercio y el Código Civil. Este es el principio *lex specialis derogat legi generali.* Véase R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 422.

■ La situación que se presenta en el caso de autos enmarca perfectamente en los supuestos contenidos en la Ley Uniforme de Valores. Específicamente, dentro de lo dispuesto por el Art. 410(a)(2) de dicha ley, la cual establece:

(a) Cualquier persona que
(2) Ofrezca o venda un valor por medio de una declaración falsa sobre un hecho material, o mediante omisión de consignar un hecho material necesario para evitar que las declaraciones formuladas, a la luz de las circunstancias bajo las cuales se hicieron, conduzcan a error (desconociendo el comprador la falsedad o la omisión), y que no sostenga el peso de la prueba de que no sabía, y que ejercitando una prudencia razonable, no pudo tener conocimiento, de la falsedad u omisión, será responsable a la persona que le compre el valor, quien podrá entablar demanda para recobrar el precio pagado por el valor, además de intereses al tipo de interés aplicable a sentencias judiciales según provisto por el reglamento aprobado a estos efectos por la Junta Financiera creada por las secs.2001 et seq. del Título 7, a partir de la fecha en que se hizo el pago, costas y razonables honorarios de abogado menos la cuantía de cualquier ingreso que haya recibido derivado del valor, al ofrecer devolver dicho valor, o por daños y perjuicios, si él ya no es dueño del valor. Los daños y perjuicios serán la cantidad que se recobraría al devolver el valor, menos su precio cuando el comprador dispuso del mismo, más interés al tipo de interés aplicable a sentencias judiciales según provisto por el reglamento aprobado a estos efectos por la Junta Financiera creada por las secs. 2001 et seq. del Título 7, a partir de la fecha en que se dispuso del valor. 10 L.P.R.A. sec. 890(a)(2).

■ A su vez, el legislador estableció claramente en el inciso (e) de la referida sección el hecho de que "[n]inguna persona podrá entablar una demanda civil de acuerdo con las disposiciones de esta sección, después de transcurridos

más de dos (2) años de haber sido efectuado el contrato de venta." 10 L.P.R.A. sec. 890(e). Este término, estamos convencidos, es el aplicable a la presente controversia; y es también el período prescriptivo que responde plenamente a la intención legislativa ya descrita. De otro modo, ¿qué objeto tendría el legislador al limitar a un período de dos (2) años el ejercicio de la acción ahí estatuida? En este sentido nos hacemos eco de las palabras del ilustrado foro de instancia en cuanto expresó:

> Adoptar la teoría expuesta por la demandante en su oposición pondría al legislador en la posición de haber creado una ley especial innecesaria e inútil y no podemos atribuir tal intención a nuestra Asamblea Legislativa. *García v. Tribunal*, 91 DPR 153, 156 (1964); *Flamboyán Gardens v. Junta de Planificación*, 103 DPR 884 (1975). Siendo la clara intención legislativa, según antes indicado, no imponer cargas indebidas sobre el emisor o negociante de valores, no podemos validar la posición de la parte demandante a los efectos de que una causa de acción como la aquí instada pueda ser incoada contra un comerciante de valores hasta quince años después de haberse consumado la compraventa. En adición, el plazo de quince años propuesto choca con el término de dos años provisto en la Ley Uniforme de Valores, cuya ley especial rige los contratos de compraventa de valores en nuestra jurisdicción. Apéndice, pág. 082.

## III

El Art. 12 de nuestro Código Civil, 31 L.P.R.A. sec. 12, establece que cuando una materia está cubierta por una ley especial, cualquier deficiencia o insuficiencia de ésta se suple por las disposiciones del Código Civil o con otras leyes *in pari materia*. Bernier y Cuevas Segarra, *op. cit.*, pág. 441. Véase, además, A. Fornies Baigorri, *Fuentes del Derecho Mercantil*, Madrid, Imp. Tipo-Línea, 1971, pág. 96.

Ahora bien, este caso no presenta laguna alguna en la ley. Por el contrario, la situación que presenta este caso está especial y claramente cubierta por el legislador. Por lo tanto, la citada disposición de la sec. 890(a)(2) de la Ley Uniforme de Valores resulta la única aplicable al presente

caso. No existe controversia en cuanto al hecho de que las partes realizaron una compraventa de naturaleza mercantil. Sin embargo, el tipo de acción implicada fue estatuida expresamente por el legislador en la Ley Uniforme de Valores, ley que regula un tipo específico de relación comercial. Más aún, dicho legislador expresó que esta medida respondía *a la falta de reglamentación* en esta área y al hecho de que las disposiciones pertinentes en el Código de Comercio *resultaban obsoletas, arcaicas y generales.*[3]

Además, al legislador establecer en el Art. 410(h), *supra*, de esta ley,[4] que los "derechos y remedios provistos por este Capítulo son en adición a cualesquiera derechos o remedios que puedan existir" (10 L.P.R.A. sec. 890(h)), claramente se refería a *remedios no previstos por esta ley*. Si no fuera de esta forma, la disposición bajo estudio resultaría completamente *inoperante*, al ser aplicables una gama de remedios generales a controversias similares a la de autos. *El legislador, entonces, habría actuado en el vacío y sin propósito alguno.*

El aplicar cualquier otro término prescriptivo derrotaría el objetivo propuesto de no imponer cargas indebidas sobre el emisor o comerciante de los valores de que se trate. De igual forma, abriría puertas indefinidas a las personas afectadas en una compra y venta de tales valores, *sin tomar en cuenta* el tráfico del comercio y la política pública que lo fomenta. De otra parte, vulneraría la filosofía que inspira el Código de Comercio al disponer períodos prescriptivos cortos que responden al propósito de no entorpecer las relaciones comerciales.

> Modernamente se tiende a reducir el tiempo de la prescripción en general, por ser los medios de comunicación más numerosos y rápidos, la representación más fácil y la cultura más elevada, haciendo que todos velemos mejor por nuestros

---

[3] Informe Conjunto de las Comisiones de lo Jurídico Civil e Industrial y Comercio sobre el P. de la C. 624. Véase Diario de Sesiones (Senado), *supra*.

[4] 10 L.P.R.A. sec. 890(h).

intereses. Pero en el orden merc. concurren más razones aún: un negocio se convierte rápidamente en base de otros, las acciones ejercitadas con retardo perturban a fondo las posiciones económicas ya constituídas, el derecho inerte y ambiguo debe someterse al hecho seguro y fecundo (Vivante); la alianza de los intereses individuales con los colectivos se siente mejor en el comercio y se afirma con más valentía, y si el deudor debe ser puntual en pagar, también debe serlo el acreedor en exigir (Bolaffio). E. Langle y Rubio, *Manual de Derecho Mercantil Español*, Barcelona, Ed. Bosch, 1959, T. III, Sec. 104, pág. 114.[5]

## IV

En el presente caso PaineWebber pagó y recibió el valor en controversia el 26 de mayo de 1987. No fue hasta el 4 de mayo de 1990, tres (3) años después, que demandó a First Boston por incumplimiento de contrato. Claramente, la causa de acción de PaineWebber se extinguió por razón de no ejercitarse dentro del período prescriptivo de dos (2) años estatuido en la Ley Uniforme de Valores, único término aplicable a esta situación de hechos. 10 L.P.R.A. sec. 890(e).

Por tales razones, *se confirmará la sentencia recurrida en este caso.*

El Juez Asociado Señor Rebollo López concurrió con el resultado. El Juez Asociado Señor Negrón García disintió con opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Negrón García.

Paradójicamente, la opinión mayoritaria del Tribunal, en aras de hacer valer el espíritu de la Ley Uniforme de Valores, logra lo contrario.

---

[5] Véase, además, a ese respecto, R. Gay de Montellá, *Código de Comercio Español Comentado*, Barcelona, Ed. Bosch, 1948.

I

PaineWebber Incorporated of Puerto Rico (en adelante PaineWebber), entidad dedicada al negocio de corretaje, acordó el 6 de mayo de 1987 con First Boston, Inc. (en adelante First Boston), la compraventa de un valor comúnmente conocido por "Ginnie Mae", *exento de contribuciones.* Le fue entregado y pagado el 26 de mayo de 1987, y sucesivamente revendido. Contrario a lo pactado, en diciembre de 1989 PaineWebber descubrió que era tributable, por lo que se vio en la obligación de resarcir a sus clientes.

Por tal motivo, PaineWebber demandó al First Boston el 4 de mayo de 1990 en el Tribunal Superior, Sala de San Juan. Alegó incumplimiento de contrato por venderle un valor tributable distinto a lo acordado. Luego de paralizarse temporeramente los trámites, la demandada First Boston pidió la desestimación basada en la defensa de caducidad. Para tales propósitos aceptó los hechos alegados. En su apoyo invocó el plazo de dos (2) años preceptuado en la Ley Uniforme de Valores, Ley Núm. 60 de 18 de junio de 1963 (10 L.P.R.A. sec. 851 *et seq.*). First Boston argumentó que como la compraventa fue el 6 de mayo de 1987 y la demanda se presentó el 4 de mayo de 1990, la reclamación fue tardía.

En oposición PaineWebber argumentó que la Ley Uniforme de Valores no derogó los derechos y remedios que existían al entrar ésta en vigor, y podía elegir los remedios disponibles y fundar su reclamación sobre preceptos generales de incumplimiento de contrato. Sobre este predicado sostuvo que su reclamo estaba cubierto por el Art. 942 del Código de Comercio, 10 L.P.R.A. sec. 1904, dispositivo de un período de prescripción de tres (3) años o, en la alternativa, por quince (15) años. Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294. Luego de una réplica y dúplica, el tribunal (Hon. Ángel F. Rossy, Juez) desestimó.

A solicitud de PaineWebber, revisamos.([1])

## II

La tesis de la demandada recurrida First Boston, acogida por la mayoría de este Tribunal, sostiene que el Art. 410 de la Ley Uniforme de Valores, 10 L.P.R.A. sec. 890, constituye el *único* remedio disponible al comprador agraviado en una compraventa de valores.([2]) Aduce que permitir otros remedios con sus respectivos términos prescriptivos derrotaría la política pública según plasmada en el siguiente extracto del Informe Conjunto de las Comisiones de lo Jurídico Civil e Industria y Comercio del Senado al P. de la C. 624:

> El objetivo fundamental del proyecto bajo consideración es el de *proteger a los inversionistas y al público en general mediante la exigencia de ciertos requisitos a las personas que se dediquen al negocio de valores* y la creación de un organismo gubernamental con poderes de supervisión y fiscalización sobre diver-

---

([1]) En su alegato discute los señalamientos siguientes:

"1. Si la Ley Uniforme de Valores excluye la aplicación de otros remedios provistos por otras leyes.

"2. Si el término de prescripción establecido por la Ley Uniforme de Valores le es aplicable a remedios provistos por otras leyes.

"3. Si los corredores-traficantes pueden considerarse corredores de cambio y bolsa bajo el Código de Comercio de Puerto Rico.

"4. Si la entrega de un Ginnie Mae tributable en vez de un Ginnie Mae exento es de cosa viciada y si contractualmente se ha alterado el término del examen tratándose de ventas mercantiles sucesivas de cosas cuyo recibo es simbólico." Solicitud de revisión, pág. 2.

Por nuestra parte, analizamos los extremos pertinentes para decidir sin entrar en elucubraciones innecesarias.

([2]) Nuestra Ley Uniforme de Valores procede de la Ley Uniforme de Valores adoptada en agosto de 1956 por la *National Conference of Commissioners on Uniform State Laws*. Véanse: L. Loss y J. Seligman, *Securities Regulation*, 3ra ed., Boston, Ed. Little Brown and Co., 1989, T. I, pág. 47; 17 Diario de Sesiones de la Asamblea Legislativa (Senado), T. 4, pág. 1629 (1963).

La ley consiste de cuatro (4) partes que versan sobre: (i) fraude y demás prácticas prohibidas; (ii) la inscripción de agentes y corredores traficantes; (iii) la inscripción de valores; (iv) disposiciones generales para la administración de la ley como por ejemplo, definiciones, exenciones, responsabilidad civil y criminal. Loss, *op. cit.*, pág. 50; Diario de Sesiones (Senado), *supra*.

sas fases del negocio, a los fines de evitar que se incurra en prácticas fraudulentas en el curso del mismo.

. . . . . . . .

... La legislación que se propone ha sido cuidadosamente confeccionada para proveer la mayor protección posible al inversionista sin imponer cargas indebidas sobre el emisor de valores ni sobre el negociante en los mismos. (Énfasis suplido.) 17 Diario de Sesiones de la Asamblea Legislativa (Senado), T. 4, págs. 1629–1630 (1963).

Esa tesis es errónea y contradictoria. La Ley Uniforme de Valores no excluye la aplicación de otros remedios. El inciso (h) del referido Art. 410 dispone:

Los derechos y remedios provistos por este Capítulo son *en adición a cualesquiera derechos o remedios que puedan existir*, pero este Capítulo no creará una causa de acción no especificada en esta sección o en la sec. 862(e) de este título. (Énfasis suplido.) 10 L.P.R.A. sec. 890(h).

El principio elemental de hermenéutica de que si "la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu", nos obliga. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14. Fieles a éste, entendemos que, en lo concerniente a la controversia de autos, *el propósito de esta cláusula de salvedad de remedios ("savings clause") es preservar íntegros aquellos remedios o derechos que provean otras fuentes.*[3] A fin de cuentas, " '[e]l texto claro de la ley es la expresión por excelencia de la intención legislativa' ". *Ferretería Matos, Inc. v. P.R. Tel. Co.*, 110 D.P.R. 153, 157 (1980), citando

---

[3] Los comentarios oficiales sobre el inciso (h) del Art. 410 la Ley Uniforme de Valores, 10 L.P.R.A. sec. 890(h), indican que el significado de la parte de éste que comienza con "pero" es evitar el desarrollo de acciones implícitas al amparo de la ley:

"No empece la existencia de varias disposiciones específicas sobre responsabilidad en cada uno de los estatutos del SEC [Securities and Exchange Commission], los tribunales federales han reconocido causas de acción implícitas a favor de un vendedor defraudado contra un comprador bajo la Regla X–10B–5 (ahora la 240.10b–5) del SEC. Véase Loss, *Securities Regulation* (1951 con suplemento de 1955), págs. 1052–66. La cláusula "pero" en la sec. 410(h) está diseñada para asegurar que no surja un desarrollo comparable basado en la violación de la sec. 101 de esta ley." (Traducción nuestra.) L. Loss y E.M. Cowett, *Blue Sky Law*, Boston, Ed. Little, Brown and Co., 1958, pág. 395.

a *Rodríguez Rodríguez v. Gobernador*, 91 D.P.R. 101, 107 (1964).

Nótese que el legislador no se refirió a remedios no previstos por esta ley, como tampoco señaló que se tratara de un remedio exclusivo; expresamente dispuso que los derechos y remedios bajo la referida ley serían adicionales a cualesquiera otros que puedan existir.

Nuestra interpretación literal del inciso (h) también encuentra apoyo en el hecho de que la práctica bajo las leyes federales de valores, en virtud de cláusulas similares a la transcrita, es que las personas agraviadas en una transacción de este tipo tienen a su disposición una gama de remedios provistos por el derecho común (*common law*), federal y estatal. L. Loss y J. Seligman, *Securities Regulation*, 3ra ed., Boston, Ed. Little, Brown and Co., 1992, T. IX, pág. 4121. Ello es así, aun cuando la ley estatal provea un término prescriptivo mayor que el federal y la reclamación bajo esta última esté prescrita. *Rousseff v. Dean Witter & Co., Inc.*, 453 F. Supp. 774, 780–782 (1978).

En resumen, conforme a la interpretación de la mayoría de este Tribunal, ¿ofrece la Ley Uniforme de Valores mayor protección a los inversionistas y al público general al acortar el período prescriptivo a dos (2) años? ¿Fomenta la compra y venta de valores? ¿No suple la cláusula de salvedad de remedios (Art. 410(h), *supra*) esta protección? Establecer que la Ley Uniforme de Valores es el único remedio disponible en el caso de autos, derrota el propósito que el legislador pretendió dar a la ley.

## III

Aclarada nuestra posición en torno a que la Ley Uniforme de Valores no excluye y, por el contrario, mantiene incólume la aplicación de otros remedios con sus respectivos términos prescriptivos, veamos si PaineWebber en efecto tiene disponible otro remedio. El examen de las ale-

gaciones —para fines de este incidente, tomadas como ciertas— nos lleva a concluir que aplica la normativa de la compraventa mercantil.

Al respecto, el Art. 243 del Código de Comercio dispone:

> Será mercantil la compraventa de cosas muebles para revenderlas, bien en la misma forma que se compraron, o bien en otra diferente, con ánimo de lucrarse en la reventa. 10 L.P.R.A. sec. 1701.

A su amparo, hemos resuelto que el elemento que distingue principalmente a la compraventa mercantil es la presencia de un "doble propósito [del comprador] de revender ulteriormente la cosas compradas y de obtener un lucro". *Reece Corp. v. Ariela, Inc.*, 122 D.P.R. 270, 276–277 (1988). Véase *Ramallo Brothers Printing, Inc. v. Ramis*, 133 D.P.R. 436 (1993).

De la demanda surge que PaineWebber acordó con First Boston la compra de un valor cuya reventa tuvo que resolver; el primero reclama, entre otras partidas, el lucro cesante. Está presente el "doble propósito" característico de la compraventa mercantil, a saber, la intención de PaineWebber revender el valor adquirido y así percibir una ganancia. De hecho, la recurrida First Boston acepta en su alegato que la compraventa celebrada entre las partes era de índole mercantil.

## IV

¿Cuáles son las obligaciones del vendedor en la compraventa mercantil? En apretada síntesis, son: (1) conservar la cosa vendida antes de la entrega; (2) entregarla en el tiempo y lugar pactados, y (3) responder de su saneamiento. R. Uría, *Derecho Mercantil*, 10ma ed., Madrid, Imp. Aguirre, 1975, págs. 478–479; M. Broseta Pont, *Manual de Derecho Mercantil*, 7ma ed., Madrid, Ed. Tecnos, 1987, págs. 402–403. Claro, esta última obligación comprende el saneamiento por evicción y por vicios.

En *Julsrud v. Peche de P.R. Inc.*, 115 D.P.R. 18 (1983), decidimos que los Arts. 254 y 260 del Código de Comercio, 10 L.P.R.A. secs. 1712 y 1718, tienen un área de tangencia entre sí por cuanto ambos se refieren al saneamiento por vicios. Allí resolvimos que el plazo de denuncia dispuesto en el Art. 260, *supra*, era de caducidad y aclaramos, invocando las disposiciones del Código Civil, las diferencias entre defectos de calidad y cantidad a que se refiere el Art. 254, *supra*, y los vicios ocultos del Art. 260, *supra*. Dijimos:

> Las diferencias de calidad son inherentes a la naturaleza de la mercancía, son diferencias básicas sobre su composición, sobre la índole de algún rasgo característico de la cosa, tales como diferencias de tejido, fibra, color, diseño, procedencia o carácter de las materias primas. El vicio oculto es el que escapa a la observación de una persona de diligencia media, el inherente al modo imperfecto en que la mercancía fue fabricada, embalada, manejada o custodiada, el que convierte en impropia la cosa para el uso que ha de destinársele. *Julsrud v. Peche de P.R., Inc.*, supra, pág. 23.

La fiel adjudicación del recurso hace necesario que precisemos los contornos de aplicación de ambos artículos. El Art. 254, *supra*, recoge "la triple hipótesis de vicio, defecto de calidad y defecto de cantidad".[4] J. Garrigues, *Curso de Derecho Mercantil*, Bogotá, Ed. Temis, 1987, T. IV, pág. 80. El Art. 254, *supra*, aplica cuando cualquiera de estas hipótesis es aparente. El Art. 260, *supra*, por su parte, *sólo se*

---

[4] Este artículo, equivalente al 336 del Código español, dispone:

"El comprador que, al tiempo de recibir las mercaderías, las examinare a su contento, no tendrá acción para repetir contra el vendedor, alegando vicio o defecto de cantidad o calidad en las mercaderías.

"El comprador tendrá el derecho de repetir contra el vendedor por defecto en la cantidad o calidad de la Continuación escolio 4 mercaderías recibidas enfardadas o embaladas, siempre que ejercite su acción dentro de los cuatro días siguientes al de su recibo, y no proceda la avería de caso fortuito, vicio propio de la cosa, o fraude.

"En estos casos, podrá el comprador optar por la rescisión del contrato o por su cumplimiento, con arreglo a lo convenido, pero siempre con la indemnización de los perjuicios que se le hubieran causado por los defectos o faltas.

"El vendedor podrá evitar esta reclamación exigiendo, en el acto de la entrega, que se haga el reconocimiento, en cuanto a cantidad y calidad, a contento del comprador." 10 L.P.R.A. sec. 1712.

*refiere a vicios ocultos*;([5]) por lo que no rige cuando se trata de defectos de calidad o cantidad internos que no están a la vista. Esos casos *equivalen a la ausencia de entrega*, que es un supuesto de incumplimiento. F. Vicent Chuliá, *Compendio Crítico de Derecho Mercantil*, 2da ed., Barcelona, Ed. Bosch, 1986, T. II, pág. 98.

La ausencia de entrega faculta al comprador a optar entre exigir el cumplimiento forzoso o resolver el contrato. En ambos casos cabe reclamar indemnización en daños y perjuicios. Art. 1077 del Código Civil, 31 L.P.R.A. sec. 3052; Art. 254 del Código de Comercio, *supra*; Vicent Chuliá, *op. cit.*, pág. 97. El término para exigir esta responsabilidad es de quince (15) años "por interacción del Art. 940 del Código de Comercio [10 L.P.R.A. sec. 1902] y el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294". *Ramallo Brothers Printing, Inc. v. Ramis*, supra, pág. 440.

## V

En virtud del derecho aplicable, según expuesto, forzoso es concluir que la entrega de un valor tributable cuando se había pactado la entrega de uno exento constituye la entrega de una cosa defectuosa en cuanto a su *calidad*. Véase Broseta Pont, *op. cit.* pág. 405. Utilizando el criterio esbozado en *Julsrud v. Peche de P.R., Inc.*, supra, la condición distinta de tributabilidad del valor entregado representa una diferencia básica sobre un rasgo característico de la cosa. Como es un defecto de calidad, no un vicio oculto, la reclamación contrario a lo que sostiene First Boston no está sujeta al plazo de denuncia dispuesto en el Art. 260, *supra*. Como de las alegaciones de la demanda no se des-

---

([5]) Su texto, equivalente al Art. 342 del Código de Comercio español, dispone:

"El comprador que no haya hecho reclamación alguna fundada en los vicios internos de la cosa vendida, dentro de los treinta días siguientes a su entrega, perderá toda acción y derecho a repetir por esta causa contra el vendedor." 10 L.P.R.A. sec. 1718.

prende que el defecto de calidad era externo, de su faz no está caduca ni prescrita; no puede sostenerse categóricamente que el defecto estaba sujeto a las disposiciones del Art. 254, *supra.* La desestimación no procedía. *Cf. Rossy v. Tribunal Superior*, 80 D.P.R. 729, 745 (1958).